# EXHIBIT C

**LOAN AGREEMENT**

made between

NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND

as Lender

and

NORTH EAST HOUSING INITIATIVE, INC.

as Borrower

Dated as of: May 11, 2023

**LOAN AGREEMENT**
**BETWEEN**
**NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND**
**AND**
**NORTH EAST HOUSING INITIATIVE, INC.**

THIS LOAN AGREEMENT ("Loan Agreement" or "Agreement") made as of the 11th day of May, 2023, between NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND, a District of Columbia nonprofit corporation (the "Lender"), with a primary place of business located at 1101 30th Street, NW, Suite 100A, Washington, D.C. 20007, and NORTH EAST HOUSING INITIATIVE, INC., a Maryland nonprofit corporation (the "Borrower"), having an address of 5307 Belair Road, Baltimore, M.D. 21206 (collectively, the "Parties"). The Parties agree that the effective date of this Agreement shall be May 11, 2023 ("Effective Date").

*R E C I T A L S:*

**WHEREAS**, Borrower desires to borrow from Lender and Lender desires to lend to Borrower the principal sum of up to Sixty Thousand and 00/100ths Dollars ($60,000.00), plus interest pursuant to and conditioned upon the terms and conditions in this Agreement and the terms of the Promissory Note of even date herewith;

**WHEREAS**, Borrower has been experiencing a period of financial hardship related to a suspension in grant funding from the City of Baltimore, Maryland, and has insufficient funds to pay all of its operating expenses;

**WHEREAS**, the Loan amount shall be used by Borrower exclusively for the purpose of financing operational, including payroll, expenses incurred by Borrower in the course of Borrower's business as a community land trust nonprofit dedicated to the preservation of affordable housing (the "Eligible Use");

**WHEREAS**, Borrower has been awarded grant funds in the amount of $225,000 from the State of Maryland's Baltimore Regional Neighborhood Initiative program (the "Neighborhood Initiative Grant");

**WHEREAS**, the Loan is intended as bridge financing for the Eligible Use until Borrower receives the awarded Neighborhood Initiative Grant funds;

**WHEREAS**, as a condition to entering into the transaction, Lender will require, that (i) Borrower represent and warrant certain matters, and (ii) the proceeds of the Promissory Note will be advanced in accordance with certain requirements set forth hereinbelow; and

**WHEREAS**, as a condition of the Loan, Borrower has executed this Loan Agreement, and Promissory Note, both of even date herewith (and both sometimes hereinafter referred to as the "Loan Documents"). The terms of the Promissory Note ("Promissory Note" or "Note") are incorporated herein and made a part hereof.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements of the parties as hereinafter set forth, it is hereby mutually agreed as follows:

## ARTICLE I
## THE LOAN

1.1     Incorporation of Recitals.  The Recitals above are incorporated in this Agreement and made a part hereof.

1.2     The Loan.  Upon and subject to the terms and conditions set forth in the Promissory Note and this Agreement, the Lender agrees to lend to the Borrower and the Borrower agrees to borrow from the Lender the principal sum ("Principal Sum") of up to Sixty Thousand and 00/100ths Dollars ($60,000.00) (the "Loan").  The Loan shall be disbursed as specified in Article VI hereof and shall bear interest in accordance with the terms of the Note.

1.3     Payments and Maturity.  The unpaid Principal Sum, together with interest thereon at the rate or rates provided for in the Note, shall be payable in accordance with the terms of the Note.

1.4     Fees.  Borrower agrees to and shall (i) pay to Lender upon execution hereof a loan origination fee equal to one half percent (0.5%) of the maximum Principal Sum at the effective date hereof ($300.00), and (ii) pay all costs incurred in connection with the execution and consummation of this Agreement, including, without limitation, any recording costs, and the reasonable fees and expenses of Lender's counsel incurred by Lender in connection with this Agreement. Borrower agrees that all costs of closing payable by Borrower may be withheld from loan proceeds at the time of execution of the Note by Lender.

1.5     Borrower knows of no, and so long as Lender or assignee holds an interest in the Note waives, releases and agrees to assert no, defenses, counterclaims or offsets to the Note, the liens and security interests securing the payment thereof, and any and all other instruments evidencing or securing said indebtedness, arising prior to or concurrent with the acquisition of the Note by Lender to the extent permitted under applicable law.

1.6     Lender has made this Loan to the Borrower based upon the Borrower's representation that the proceeds of the Loan will be used by Borrower for the sole purpose of financing Borrower's operational expenses.

1.7     Borrower shall not assign its obligations hereunder to another or successor organization, whether for any purpose, except with Lender's prior written approval of such successor, which approval shall be given at Lender's sole discretion.

*Loan Agreement*
*NHTCDF – NEHI*
*(Enterprise Loan)*

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF THE BORROWER

Borrower represents and warrants to the Lender as of the date of this Agreement and agrees that on the date of any and all further commitments and disbursements of the Loan, the following shall be true and accurate:

2.1    Borrower is a nonprofit corporation duly organized, validly existing and in good standing under the laws of the State of Maryland.

2.2    Borrower has full power to enter into and perform its obligations under this Agreement, the Note and the other Loan Documents.  The execution and delivery of this Agreement, the Note and the other Loan Documents and the performance and observance of their terms, conditions and obligations have been duly authorized by all necessary action on the part of Borrower.  This Agreement, the Note and the other Loan Documents constitute, and any other agreement required hereby shall constitute, when executed and delivered by Borrower to Lender, valid and binding obligations of Borrower enforceable in accordance with its governing documents.

2.3    The execution and delivery of this Agreement, the Note and the other Loan Documents and consummation of all the transactions contemplated hereby and thereby, do not and will not conflict with, or be in contravention of any of Borrower's governing documents, any law, order, rule or regulation applicable to Borrower or any agreement or instrument to which Borrower is a party.

2.4    Borrower does not know of any material contingent liabilities affecting Borrower that are not disclosed in Borrower's most recent financial statements.  Since the date of the most recent financial statements provided to Lender there has been no material adverse change in the Borrower's financial condition, assets, and liabilities.  Borrower is now solvent and no bankruptcy or insolvency proceedings are pending or contemplated by Borrower or, to the best of Borrower's knowledge, against Borrower.

2.5    There is no action, suit, legal proceeding or proceeding pending or threatened (or to the best of Borrower's current actual knowledge any basis therefore) against Borrower in any court or before any arbitrator of any kind or before or by any governmental body.

2.6    Borrower does not know of any Event of Default as hereinafter defined, which exists at the time of the executing of this Agreement.

2.7    Borrower agrees the foregoing representations and warranties are continuing in nature and that Borrower is under an ongoing duty to disclose to Lender any modification to representations made under this Section.

2.8    Borrower represents that the proceeds of the Loan will be used by Borrower for the sole purpose of financing Borrower's operational expenses.

2.9    Neither the Borrower, nor any of its principals, nor any person or entity owning a direct or indirect interest in or having a direct control over Borrower is now, nor has it ever been, named on (i) the list of Specifically Designated Nationals and Blocked Persons established pursuant to Executive Order 13224 and maintained by the U.S. Department of Treasury's Office of Foreign Assets Control or any successor agency or other entity or (ii) any other list of terrorists or terrorist organizations maintained by any agency of the United States or any other governmental authority.  Borrower shall submit such information as Lender may reasonably request to enable Lender to confirm that neither Borrower nor any of its principals, nor any person or entity owning a direct or indirect interest in or having a direct control over Borrower is named on any such list.

## ARTICLE III
## AFFIRMATIVE COVENANTS

Borrower covenants and agrees that, until payment in full of the outstanding principal and interest of the Loan to the Lender that:

3.1    Borrower shall make all payments of principal and interest under the Note as and when the same become due and payable, without notice or demand.

3.2    Borrower shall comply promptly with all laws, rules, regulations, resolutions, ordinances and codes (including, without limitation, all environmental laws and regulations) applicable to the business of the Borrower and to the conduct and operation of its business.

3.3    During the term of the Loan, Borrower shall submit the following reporting information:

(a)    Borrower's audited financial statements to be submitted within one hundred fifty (150) days of the end of Borrower's and Guarantor's fiscal years; and

(b)    Borrower's internally prepared financial statements to be submitted quarterly within forty-five (45) days of the end of each calendar quarter.

3.4    During the term of the loan, without prior written consent of Lender, Borrower shall (i) not create, incur, assume or suffer to exist any additional indebtedness or in any manner become liable directly or indirectly with respect to any indebtedness, and (ii) not guarantee or become obligated to pay the obligations of any other person, whether direct or indirect.

3.5    Borrower shall promptly advise Lender of any material adverse change in the condition, financial or otherwise of the Borrower or any event of default with any other lender or creditor of any kind.

3.6    Borrower shall promptly perform and comply with all other terms, conditions, covenants and prohibitions required by the terms of any of this Agreement and the Loan Documents.

3.7     Borrower shall not reorganize in any manner that would allow for the dilution of the Borrower's assets, and shall not suffer or permit (a) any sale, assignment, encumbrance or other change or transfer of legal or equitable control of Borrower, (b) the issuance, sale, merger, consolidation, encumbrance, transfer, pledge, assignment or disposition of any ownership interest in, or assets of, Borrower, (c) the conversion by Borrower, whether by operation of law or otherwise, to any other form of business entity, or (d) the sale or transfer of all or substantially all of the assets of Borrower, which would or could render Borrower insolvent.

3.8     Borrower grants Lender permission to use information related to this Agreement and Loan in promotional, marketing material and/or reports produced by the Lender.

**ARTICLE IV**
**EVENTS OF DEFAULT**

4.1     Default.  Each of the following shall constitute a "Default" and, if not cured within any grace, notice and/or cure period specified below, shall constitute an "Event of Default":

(a)     Default in Payment Obligations.  Borrower shall fail to make any payment of any principal or interest due under the Note within ten (10) days of the date such payment is due.

(b)     Default Under Loan Documents.  Except as provided in Section 4.1(a), Borrower shall (i) default in the prompt performance or observance of any provision of this Agreement and/or any other Loan Document and shall fail to remedy the same within thirty (30) days after written demand by Lender is received (or deemed to be received) by Borrower, and/or (ii) any material representation or warranty made by Borrower herein, in any other Loan Document or in any certificate delivered pursuant hereto, or any financial statement delivered to Lender hereunder, shall be false in any material respect when made or given.

(c)     Bankruptcy/Insolvency.  Borrower shall (a)(i) become insolvent, (ii) be unable, or admit in writing an inability, to pay debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) file a voluntary petition in bankruptcy for reorganization or to effect a plan or other arrangement with creditors, or (v) apply to a court for the appointment of a receiver for any of its assets, or (b)(i) be adjudicated as bankrupt in an involuntary proceeding, (ii) have any writ of attachment, garnishment, execution or similar process issued against any of its property or (iii) have a receiver appointed for any of its assets (with or without consent) which, as to any event in this clause (b), is not stayed, discharged or satisfied within a reasonable period of time under the circumstances (not to exceed, in any event, sixty (60) days after commencement of the case) so long as Borrower diligently pursues such stay, discharge or satisfaction.

(d)     Material Loss or Adverse Change.  Borrower shall suffer: (i) a casualty as to any material asset or assets which is not, except for deductibles acceptable to Lender,

6 of 13

fully covered by insurance, or (ii) there shall be any material adverse change in the business or financial condition of Borrower.

(e)    Failure to comply with any and all provisions of Article III, including failure of Borrower to submit the reporting information as required in Section 3.3.

## ARTICLE V
## RIGHTS OF LENDER IN EVENT OF DEFAULT BY BORROWER

5.1    Lenders Rights Upon Default.  Upon the occurrence and continuance of an Event of Default, Lender shall have the following additional rights and remedies, together with such rights and remedies as are granted to Lender in the Loan Agreement, in the other Loan Documents and in any other agreement executed in conjunction with this Agreement, and all such rights and remedies shall be cumulative:

5.2    Acceleration.  Lender shall have the right to accelerate the maturity of the Promissory Note and to declare all sums advanced to Borrower under the Loan to be immediately due and payable.

5.3    Curing of Defaults.  Upon the occurrence of any Event of Default, or the threat of any such default, which may be cured by the payment of money to any person or entity other than Lender, Lender shall have the right to make any such payment for the account of Borrower with ten (10) days' prior written notice to Borrower.  Lender may take any and all actions it deems appropriate to cure any other Event of Default on behalf of Borrower.  No cure by Lender of any Event of Default on behalf of Borrower shall be deemed a cure or waiver of such Event of Default as between Lender and Borrower and Lender may, notwithstanding any cure by it of such Event of Default on behalf of Borrower, pursue any and all remedies available hereunder and under the other Loan Documents.

5.4    Other Rights.  In addition to all other rights available to Lender hereunder, Lender shall have all of the rights and remedies prescribed in the Loan Documents and accorded to creditors under applicable law, and shall have the right, without resort to any other rights or remedies, to immediately pursue all rights and remedies (whether available under the Loan Documents, applicable law or otherwise) against Borrower.

5.5    Upon the occurrence of any Event of Default and at any time thereafter, Lender shall be under no further obligation to make disbursements hereunder or take any other action with respect to this Agreement.  The Loan, with all accrued interest and other amounts payable hereunder, shall, at the option of Lender, become due and payable without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Borrower.  Once Lender has exercised its right to accelerate, Lender's acceptance of any efforts by the Borrower to cure the underlying Default shall be at the Lender's discretion and shall not constitute a waiver of remedies exercised up to that point, including acceleration.  Lender may proceed with every remedy available at law or in equity or provided for herein or in any document executed in

connection herewith, and all expenses incurred by Lender in connection with any remedy shall be deemed indebtedness of Borrower to Lender and a part of the obligations.

5.6     No delay or failure of Lender in the exercise of any right or remedy provided for hereunder shall be deemed a waiver of the right by Lender, and no exercise or partial exercise or waiver of any right or remedy shall be deemed a waiver of any further exercise of such right or remedy or any other right or remedy that Lender may have.

## ARTICLE VI
## DISBURSEMENT OF THE LOAN PROCEEDS

6.1     Closing.  The closing of the Loan (the "Closing") shall occur upon satisfaction of the conditions set forth in this Section 6.1.  The Borrower shall ensure that the following documents, agreements and certificates shall be duly executed and/or delivered, and the following closing conditions satisfied at or by the time of Closing:

(a)     The Promissory Note and Loan Agreement;

(b)     Duly certified copies of the Borrower's and Guarantor's organizational documents, and authorizing resolutions for the transaction, as specified by Lender prior to Closing;

(c)     Evidence of general liability insurance for the Borrower, naming Lender as an additional insured, in an amount approved by Lender;

(d)     Invoices, receipts or other documentation of costs related to the Eligible Use as specified by Lender prior to Closing; and

(e)     Such other documents and instruments as Lender shall reasonably require pursuant to the terms of the Loan Documents.

6.2     Disbursement.  Subject to the requirements of this Agreement and the Promissory Note, Lender agrees to lend the Loan monies in the amount of the maximum Principal Sum set forth in the Promissory Note. The Loan shall be disbursed in full at the time of Closing less the fees set forth in Section 1.4 above.

## ARTICLE VII
## INDEMNITY BY THE BORROWER

7.1     Borrower shall indemnify and hold Lender harmless at all times after the date hereof against and in respect of all costs, expenses, claims, suits, damages, deficiencies, liabilities and loss (including, without limitation, reasonable costs and expenses for legal and accounting services incurred in connection therewith) of any nature suffered, incurred or paid by the Lender which would not have been suffered, incurred or paid if all the representations,

warranties, covenants and agreements made by the Borrower in this Agreement or in any other instrument or document furnished to Lender in connection herewith had been true, complete and correct and had been performed and fulfilled, except to the extent such costs, expenses, claims, suits, damages, deficiencies, liabilities and loss are the result of Lender's gross negligence, willful misconduct or bad faith.

7.2     In addition, Borrower agrees to pay to Lender on demand all Expenses (as defined below) paid, incurred or advanced by or on behalf of Lender.  If Borrower fails to pay for any of the said Expenses following demand by Lender, Lender may, but shall not be obligated to, pay for the same and in such event any sums expended by Lender shall both (i) become additional obligations of Borrower and (ii) bear interest from the date of disbursement at the Default Rate (as defined in the Note) and shall be payable by Borrower with interest, upon demand by Lender. "Expenses" means all fees and out-of-pocket charges, costs and expenses of any nature whatsoever incurred at any time and from time to time (whether before or after an Event of Default) in making, funding, or modifying the Loan, in negotiating or entering into any "workout" of the Loan, or in exercising or enforcing any rights, powers and remedies provided in any of the other Loan Documents, including reasonable attorneys' fees, court costs, and receiver's fees.

## ARTICLE VIII
## MISCELLANEOUS

8.1     No provision or term of this Agreement may be amended, modified, revoked, supplemented, waived or otherwise changed except by a written instrument duly executed by Borrower and Lender and designated as an amendment, supplement or waiver.

8.2     Time is of the essence as to all dates set forth herein.

8.3     Any notices and payments required to be given to any party pursuant to any provision of this Agreement shall be in writing, shall be given by certified mail, return receipt requested, delivered by a nationally recognized same-day or overnight delivery service that provides written confirmation of delivery, by email, or delivered by hand, addressed as follows:

If to Lender:    National Housing Trust Community Development Fund
1101 30th Street, NW, Suite 100A
Washington, D.C. 20007
Attn:  Shellon Fraser, Senior Director of Lending
Email: lendingteam@nhtinc.org

If to Borrower: North East Housing Initiative, Inc.
P.O. Box 11762
5307 Belair Road
Baltimore, MD 21206
Attn:  Garrick R. Goode, Executive Director
Email: garrick.good@nehihomes.org

9 of 13

Notices shall be deemed given when mailed, when delivered if by delivery service or by hand, and when transmitted if by email provided that the sending party receives confirmation of receipt; payments shall be deemed given when received.  Each of the Lender and Borrower may change its respective address by such notice to the other.

8.4     The Loan Documents constitute and incorporate the entire agreement between Lender and Borrower concerning the subject matter of this Agreement and supersede any prior agreements between Lender and Borrower concerning the subject matter thereof.

8.5     The Loan Documents shall be governed by and construed in accordance with the Laws of the District of Columbia.

8.6     This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

8.7     Usury Savings Clause.  All agreements between Borrower and Lender, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of the maturity of the Note or otherwise, shall the interest contracted for, charged or received by Lender exceed the maximum amount permissible under applicable law.  If, from any circumstance whatsoever, interest would otherwise be payable to Lender in excess of the maximum lawful amount, the interest payable to Lender shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Lender shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal of the Note and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal of the Note such excess shall be refunded to Borrower.  All interest paid or agreed to be paid to the holder of the Note shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period from the date of the Note until payment in full of the principal (including the period of any renewal or extension hereof) so that the interest thereon for such full period shall not exceed the maximum amount permitted by applicable law.  This paragraph shall control all agreements between Borrower and Lender.

8.8     Continuation of Agreements. All conditions, agreements, obligations, covenants, requirements, limitations, and undertakings imposed upon, agreed to by, or otherwise required of Borrower under any and all documents and agreements relating to the Note are affirmed and carried forward as continuing obligations of Borrower. Except as expressly modified hereby, all terms, conditions, covenants, requirements and obligations set out in the Note and all other agreements and documents relating to the loan evidenced by the Note shall remain as set out in such documents.

8.9     Severability.  The provisions of this Agreement shall be deemed independent and severable, and the invalidity or partial invalidity or unenforceability of any one provision or portion thereof shall not affect the validity or enforceability of any other provision hereof.

8.10    Construction.  The parties acknowledge that each party and its counsel have reviewed and revised this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendments or exhibits hereto.

8.11    Headings.  The headings and section or paragraph numbers and references in this Agreement are for purposes of reference only and shall not be used in construing the meaning of this Agreement or any provision hereof.

8.12    Successors and Assigns; Participation. The terms of this Agreement will bind and benefit the legal representatives, successors, and assigns of the parties; provided, however, that the Borrower may not assign this Agreement or any Loan funds, or assign or delegate any of its rights, obligations, or duties to third parties without the prior written consent of Lender.  Lender shall have the right to assign this Agreement and the Loan Documents or assign or sell the Loan or participation in the Loan to any other persons or entities, or act as agent for any third party in making the Loan, without the consent of or notice to the Borrower, and on any such assignment or sale, Lender shall be released of any and all liabilities, responsibilities, or potential liabilities arising out of this Agreement or any of the Loan Documents.  In the event Lender participates the Loan, the Lender, at its sole discretion, may retain all servicing of the Loan.  Lender may disclose to any principal, purchaser, participants, or prospective principals, purchasers, or participants any information or other data or material in Lender's possession relating to the Borrower, the Lender and Loan, without the consent of or notice to the Borrower.

8.13    WAIVER OF TRIAL BY JURY.  BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION ARISING IN ANY WAY IN CONNECTION WITH THIS AGREEMENT, THE NOTE, OR ANY OF THE OTHER LOAN DOCUMENTS, THE LOAN OR ANY OTHER STATEMENTS OR ACTIONS OF BORROWER OR LENDER.  BORROWER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS DISCUSSED THIS WAIVER WITH SUCH LEGAL COUNSEL.  BORROWER FURTHER ACKNOWLEDGES THAT (i) IT HAS READ AND UNDERSTANDS THE MEANING AND RAMIFICATIONS OF THIS WAIVER, (ii) THIS WAIVER IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN, ENTER INTO THIS AGREEMENT AND EACH OF THE OTHER LOAN DOCUMENTS, AND (iii) THIS WAIVER SHALL BE EFFECTIVE AS TO EACH OF SUCH OTHER LOAN DOCUMENTS AS IF FULLY INCORPORATED THEREIN.

8.14    Inconsistencies.  In the event of any inconsistency between this Loan Agreement and the Promissory Note, the provisions of the Loan Agreement shall be controlling.

8.15    Nothing herein shall be construed as establishing a relationship between Lender and Borrower or any other party hereto except the Lender-Borrower relationship.

*Loan Agreement*
*NHTCDF – NEHI*
*(Enterprise Loan)*

**THIS LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AS TO THE TERMS STATED HEREIN AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page.]*

IN WITNESS WHEREOF, Lender and Borrower have each executed this Loan Agreement the day and year first above written.

LENDER:

**National Housing Trust Community Development Fund,** a District of Columbia nonprofit corporation

By: _____
     Josh Earn
     Vice President

BORROWER:

**North East Housing Initiative, Inc.,** a Maryland nonprofit corporation

By: _____
     Garrick R. Good
     Executive Director

*Signature page to Loan Agreement*
*NHTCDF – NEHI*
*(Enterprise Loan)*

IN WITNESS WHEREOF, Lender and Borrower have each executed this Loan Agreement the day and year first above written.

**LENDER:**

**National Housing Trust**
**Community Development Fund,**
a District of Columbia nonprofit corporation

By: _____
Josh Earn
Vice President

**BORROWER:**

**North East Housing Initiative, Inc.,**
a Maryland nonprofit corporation

By: _____
Garrick R. Good
Executive Director

*Signature page to Loan Agreement*
*NHTCDF – NEHI*
*(Enterprise Loan)*

# PROMISSORY NOTE

Washington, D.C.

U.S. $60,000.00                                                                                       May 11, 2023

FOR VALUE RECEIVED, NORTH EAST HOUSING INITIATIVE, INC., a Maryland nonprofit corporation ("Maker"), having a principal address of 5307 Belair Road, Baltimore, M.D. 21206, hereby promises to pay to the order of the NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND, a District of Columbia nonprofit corporation (hereinafter with its successors and assigns called the "Lender" or the "Payee"), having an address at 1101 30th Street, NW, Suite 100A, Washington, DC 20007 or at such other place as Payee from time to time may designate in writing, the maximum principal sum of up to SIXTY THOUSAND AND 00/100THS DOLLARS ($60,000.00), and interest from the date hereof on the balance of principal from time to time outstanding, in United States currency at the rates and at the times hereinafter described, less such amounts as shall have been repaid in accordance with this Promissory Note (the "Loan").

This Note is issued by Maker pursuant to that certain Loan Agreement of even date herewith (the "Loan Agreement") entered into between Payee and Maker.  Capitalized terms used but not defined in this Note have the same meaning as set forth in the Loan Agreement.

1.      Term.  The Loan Term shall begin May 11, 2023 and continue until the Maturity Date, as defined in Section 3.

2.      Interest.  The outstanding principal amount of the Loan shall bear an interest rate of five and one half percent (5.5%) (the "Interest Rate").  Interest shall be calculated on the basis of a 360-day year, a 30 day month for all full months, and at a daily rate of 0.01527778% for the actual number of days elapsed for partial months.

3.      Payments and Maturity.  The entire balance of unpaid principal, together with interest accrued and unpaid thereon, and all fees and costs due the Lender under this Note shall be due and payable in full on the earlier of (i) Borrower's receipt of Neighborhood Initiative Grant funds, or (ii) September 30, 2023 ("Maturity Date").  In the event that grant funds from the Neighborhood Initiative Grant are not received prior to the Maturity Date and Borrower provides evidence of the delay to the satisfaction of Lender, the Maturity Date shall be extended to December 30, 2023.

Each installment shall be applied first to the payment of late charges, then to interest and then to principal; provided, however, that any payments may be applied, at the option of the Payee, to the repayment of any sums due under the Loan Agreement.  If any of the aforesaid installments or any sums required to be paid under the terms of this Note or under the terms of the Loan Agreement are not paid within seven (7) days of the due date thereof, the Payee, at its option, and in addition to any remedies available to it, may charge the undersigned a "late charge" of ten percent (10%) of each unpaid installment and/or sum, to reimburse Payee for the

- 1 -

extra expense involved in handling delinquent payments, which the undersigned agrees is a fair and reasonable cost for such expense and not a penalty.

4.     Loan Agreement.  The terms, covenants, conditions, stipulations, warranties, representations and agreements contained in the Loan Agreement are hereby made a part of this Promissory Note to the same extent as though the Loan Agreement were fully set forth herein.

5.     Prepayment.  The Maker shall have the privilege to prepay this Note in full or in part at any time without penalty or fee.

6.     General Provisions.

(a)     Maker agrees that the obligation evidenced by this Note is an exempt transaction under the Truth-in-Lending Act, 15 U.S.C. § 1601, et seq.

(b)     The parties hereto intend and believe that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Maker and the holder or holders hereof under the remainder of this Note shall continue in full force and effect.

(c)     All agreements herein are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance hereof, or otherwise, shall the amount paid or agreed to be paid to the holders hereof for the use, forbearance or detention of the money to be advanced hereunder exceed the highest lawful rate permissible under applicable usury laws.  If, from any circumstances whatsoever, the fulfillment of any provision hereof, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity and if from any circumstance the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance due hereunder and not to the payment of interest.  Any action by Payee shall not be enforced to the extent prohibited by the Truth in Lending Act as implemented by Federal Reserve Regulation Z.

*Promissory Note*
*NHTCDF – NEHI*
*(Enterprise Loan)*

(d)    This Note and all provisions hereof shall be binding upon Maker and all persons claiming under or through Maker, and shall inure to the benefit of Payee, together with its successors and assigns, including each owner and holder from time to time of this Note.

(e)    Time is of the essence as to all dates set forth herein.

(f)    Maker agrees that its liability shall not be in any manner affected by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by Payee; and Maker consents to any indulgences and all extensions of time, renewals, waivers, or modifications that may be granted by Payee with respect to the payment or other provisions of this Note, and to any substitution, exchange or release of the collateral, or any part thereof, with or without substitution, and agrees to the addition or release of any makers, endorsers, guarantors, or sureties, all whether primarily or secondarily liable, without notice to Maker and without affecting its liability hereunder.

(g)    Maker hereby waives and renounces for itself, its successors and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, or exemption and homestead laws now provided, or which may hereafter be provided, by the laws of the United States and of any state thereof against the enforcement and collection of the obligations evidenced by this Note.

(h)    If this Note is placed in the hands of attorneys for collection or is collected through any legal proceedings, Maker promises and agrees to pay, in addition to the principal, interest and other sums due and payable hereon, all reasonable costs of collecting or attempting to collect this Note, including all reasonable attorneys' fees and disbursements.

(i)    All parties now or hereafter liable with respect to this Note, whether Maker, principal, surety, guarantor, endorsee or otherwise hereby severally waive presentment for payment, demand, notice of nonpayment or dishonor, protest and notice of protest.  No failure to accelerate the indebtedness evidenced hereby, acceptance of a past due installment following the expiration of any cure period provided by this Note, any Loan Document or applicable law, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of Payee thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder or by the laws of the State.  Maker hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing.

(j)    If an Event of Default occurs under the Loan Agreement, the entire unpaid balance of the principal and interest evidenced by this Promissory Note, together with all sums of money advanced by the Payee in accordance with the terms of this Promissory Note or the Loan Agreement and all sums due and owing for any late charge or charges

- 3 -

hereunder, shall, at the option of the Payee, become immediately due and payable, without demand made therefor and without notice to any person, notice of the exercise of said option being hereby expressly waived, and shall thereafter, while such default or Event of Default is continuing, until this Promissory Note is paid, bear interest at a per annum rate of interest equal to the lesser of (i) the Interest Rate plus five percent (5.0%) or (ii) the maximum rate allowable by law (the "Default Rate"), and Payee shall have all remedies of a secured party under law and equity to enforce the payment of all sums due under this Promissory Note, time being of the essence.

(k)     Successors and Assigns; Participation. The terms of this Note will bind and benefit the legal representatives, successors, and assigns of the parties; provided, however, that the Maker may not assign this Note or any Loan funds, or assign or delegate any of its rights, obligations, or duties to third parties without the prior written consent of Payee. Payee shall have the right to assign this Note and the Loan Documents or assign or sell the Loan or participation in the Loan to any other persons or entities, or act as agent for any third party in making the Loan, without the consent of or notice to the Maker, and on any such assignment or sale, Payee shall be released of any and all liabilities, responsibilities, or potential liabilities arising out of this Note or any of the Loan Documents.  In the event Payee participates the Loan, the Payee, at its sole discretion, may retain all servicing of the Loan.  Payee may disclose to any principal, purchaser, participants, or prospective principals, purchasers, or participants any information or other data or material in Payee's possession relating to the Maker, the Payee and Loan, without the consent of or notice to the Maker.

(l)     The Maker of this Promissory Note waives demand, presentment, protest, notice of dishonor and, any other type of notice with respect to this Promissory Note, including notice of any failure to perform or default of or by any person obligated thereon.

(m)     Maker specifically grants Payee permission to use information related to this Loan and Note in promotional, marketing material and/or reports produced by the Payee.

(n)     THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE DISTRICT OF COLUMBIA AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA.

(o)     Maker agrees that all litigation arising out of this Note shall be in the local or federal courts located in the District of Columbia, and Maker hereby waives any defense inconvenient forum.  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, MAKER HEREBY WAIVES TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF THIS NOTE OR ANY OF THE OTHER LOAN DOCUMENTS.

- 4 -

Maker has delivered this Note as of the day and year first set forth above.

**MAKER:**

**North East Housing Initiative, Inc.,**
a Maryland nonprofit corporation

By: _____
Garrick R. Good
Executive Director

- 5 -

## LOAN MODIFICATION AGREEMENT

THIS LOAN MODIFICATION AGREEMENT (this "**Agreement**") is made and entered into as of September 30, 2023 (the "**Effective Date**") by and between NORTH EAST HOUSING INITIATIVE, INC., a Maryland nonprofit corporation("**Borrower**"), having an address of 5307 Belair Road, Baltimore, M.D. 21206, and NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND, a District of Columbia nonprofit corporation ("**Lender**"), having an address of 1101 30th Street NW, Suite 100A, Washington, D.C. 20007,each of which is sometimes referred to as a "Party" and collectively as the "Parties."

## WITNESSETH

WHEREAS, Borrower and Lender are party to that certain Loan Agreement, dated as of May 11, 2023 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), whereby Lender agreed to lend to Borrower the principal amount of $60,000.00 (the "**Loan**") exclusively for the purpose of financing operational, including payroll, expenses incurred by Borrower in the course of Borrower's business as a community land trust nonprofit dedicated to the preservation of affordable housing (the "Eligible Use");

WHEREAS, pursuant to the Loan Agreement, Borrower executed for the benefit of Lender that certain Promissory Note, dated May 11, 2023, in the amount of SIXTY THOUSAND AND 00/100THS DOLLARS ($60,000.00) (as amended, restated, supplemented, or otherwise modified from time to time, the "**Promissory Note**");

WHEREAS, the Promissory Note provided that the entire unpaid principal balance of the Loan, together with all accrued and unpaid interest thereon, and all other fees, costs and charges, if any, due and payable pursuant to the Loan Documents would be due and payable in full no later than September 30, 2023 (the "**Maturity Date**");

WHEREAS, the Parties desire to further extend the Loan term, and subject to the terms and conditions set forth herein, Lender has agreed to extend the Loan accordingly.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Loan terms and the Loan Documents as follows:

1.    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

2.    The Maturity Date of the Loan is hereby extended to the earlier of (i) from September 30, 2023 to November 29, 2023.

3.    As a condition of Lender's extension of the Maturity Date, upon execution of this Agreement, Borrower agrees to and shall pay to Lender a loan modification fee equal to $500.00.

1

4.      Except as expressly provided in this Agreement, the Loan Agreement, Promissory Note, and all other Loan Documents remain in full force and effect, unmodified.

5.      This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument and each of which shall be deemed an original.

6.      This Agreement may be duly executed and delivered by a Party by execution and delivery of the signature page of a counterpart to the other Party.  Each party agrees that this Agreement may be electronically signed, and that any electronic signatures appearing on this Agreement are the same as handwritten signatures for the purposes of validity, enforceability, and admissibility.

*[Signatures on following page.]*

2

IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

**BORROWER**:

**North East Housing Initiative, Inc.,**
a Maryland nonprofit corporation,

By: _Garrick Good_
DocuSigned by:
D41527A649AF42A...
Garrick R. Good
Executive Director

**LENDER:**

**National Housing Trust Community Development Fund,**
a District of Columbia nonprofit corporation

By: _Josh Earn_
DocuSigned by:
DB9F7CB009CF49F...
Josh Earn
Vice President

3

## SECOND LOAN MODIFICATION AGREEMENT

THIS SECOND LOAN MODIFICATION AGREEMENT (this "**Agreement**") is made and entered into as of November 29, 2023 (the "**Effective Date**") by and between NORTH EAST HOUSING INITIATIVE, INC., a Maryland nonprofit corporation("**Borrower**"), having an address of 5307 Belair Road, Baltimore, M.D. 21206, and NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND, a District of Columbia nonprofit corporation ("**Lender**"), having an address of 1101 30th Street NW, Suite 100A, Washington, D.C. 20007,each of which is sometimes referred to as a "Party" and collectively as the "Parties."

## WITNESSETH

WHEREAS, Borrower and Lender are party to that certain Loan Agreement, dated as of May 11, 2023 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), whereby Lender agreed to lend to Borrower the principal amount of $60,000.00 (the "**Loan**") exclusively for the purpose of financing operational, including payroll, expenses incurred by Borrower in the course of Borrower's business as a community land trust nonprofit dedicated to the preservation of affordable housing (the "Eligible Use");

WHEREAS, pursuant to the Loan Agreement, Borrower executed for the benefit of Lender that certain Promissory Note, dated May 11, 2023, in the amount of SIXTY THOUSAND AND 00/100THS DOLLARS ($60,000.00) (as amended, restated, supplemented, or otherwise modified from time to time, the "**Promissory Note**");

WHEREAS, the Promissory Note provided that the entire unpaid principal balance of the Loan, together with all accrued and unpaid interest thereon, and all other fees, costs and charges, if any, due and payable pursuant to the Loan Documents would be due and payable in full no later than September 30, 2023 (the "**Maturity Date**");

WHEREAS, the Maturity Date was extended to November 29, 2023 pursuant to that certain Loan Modification Agreement, dated September 30, 2023 by and between Borrower and Lender;

WHEREAS, the Parties desire to further extend the Loan term, and subject to the terms and conditions set forth herein, Lender has agreed to extend the Loan accordingly.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Loan terms and the Loan Documents as follows:

1. Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

2. The Maturity Date of the Loan is hereby extended to from November 29, 2023 to January 28, 2024.

1

3.      Except as expressly provided in this Agreement, the Loan Agreement, Promissory Note, and all other Loan Documents remain in full force and effect, unmodified.

4.      This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument and each of which shall be deemed an original.

5.      This Agreement may be duly executed and delivered by a Party by execution and delivery of the signature page of a counterpart to the other Party.  Each party agrees that this Agreement may be electronically signed, and that any electronic signatures appearing on this Agreement are the same as handwritten signatures for the purposes of validity, enforceability, and admissibility.

*[Signatures on following page.]*

2

IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

**BORROWER**:

**North East Housing Initiative, Inc.,**
a Maryland nonprofit corporation,

By: _Garrick Good_
      D41527A649AE42A

Garrick R. Good
Executive Director

**LENDER:**

**National Housing Trust Community Development Fund,**
a District of Columbia nonprofit corporation

By: _Josh Earn_
      DB9E7CB009CE49E

Josh Earn
Vice President

3

# THIRD LOAN MODIFICATION AGREEMENT

THIS THIRD LOAN MODIFICATION AGREEMENT (this "**Agreement**") is made and entered into as of January 28, 2024 (the "**Effective Date**") by and between NORTH EAST HOUSING INITIATIVE, INC., a Maryland nonprofit corporation("**Borrower**"), having an address of 5307 Belair Road, Baltimore, M.D. 21206, and NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND, a District of Columbia nonprofit corporation ("**Lender**"), having an address of 1101 Connecticut Ave NW, Suite 700, Washington, D.C. 20036, each of which is sometimes referred to as a "Party" and collectively as the "Parties."

## WITNESSETH

WHEREAS, Borrower and Lender are party to that certain Loan Agreement, dated as of May 11, 2023 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), whereby Lender agreed to lend to Borrower the principal amount of $60,000.00 (the "**Loan**") exclusively for the purpose of financing operational, including payroll, expenses incurred by Borrower in the course of Borrower's business as a community land trust nonprofit dedicated to the preservation of affordable housing (the "Eligible Use");

WHEREAS, pursuant to the Loan Agreement, Borrower executed for the benefit of Lender that certain Promissory Note, dated May 11, 2023, in the amount of SIXTY THOUSAND AND 00/100THS DOLLARS ($60,000.00) (as amended, restated, supplemented, or otherwise modified from time to time, the "**Promissory Note**");

WHEREAS, the Promissory Note provided that the entire unpaid principal balance of the Loan, together with all accrued and unpaid interest thereon, and all other fees, costs and charges, if any, due and payable pursuant to the Loan Documents would be due and payable in full no later than September 30, 2023 (the "**Maturity Date**");

WHEREAS, the Maturity Date was extended to (i) November 29, 2023 pursuant to that certain Loan Modification Agreement, dated September 30, 2023 by and between Borrower and Lender, and (ii) January 28, 2024 pursuant to that certain Second Loan Modification Agreement dated November 29, 2023 by and between Borrower and Lender;

WHEREAS, the Parties desire to further extend the Loan term, and subject to the terms and conditions set forth herein, Lender has agreed to extend the Loan accordingly.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Loan terms and the Loan Documents as follows:

1.    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

2.    The Maturity Date of the Loan is hereby extended from January 28, 2024 to July 28, 2024.

1

3.      Except as expressly provided in this Agreement, the Loan Agreement, Promissory Note, and all other Loan Documents remain in full force and effect, unmodified.

4.      This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument and each of which shall be deemed an original.

5.      This Agreement may be duly executed and delivered by a Party by execution and delivery of the signature page of a counterpart to the other Party.  Each party agrees that this Agreement may be electronically signed, and that any electronic signatures appearing on this Agreement are the same as handwritten signatures for the purposes of validity, enforceability, and admissibility.

*[Signatures on following page.]*

2

IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

**BORROWER**:

**North East Housing Initiative, Inc.,**
a Maryland nonprofit corporation,

By:  *Garrick Good*
     D41527A649AF42A

Garrick R. Good
Executive Director

**LENDER:**

**National Housing Trust Community Development Fund,**
a District of Columbia nonprofit corporation

By:  *Josh Earn*
     DB9E7CB009CE49E

Josh Earn
Vice President

3

## FOURTH LOAN MODIFICATION AGREEMENT

THIS FOURTH LOAN MODIFICATION AGREEMENT (this "**Agreement**") is made and entered into as of July 28, 2024 (the "**Effective Date**") by and between NORTH EAST HOUSING INITIATIVE, INC., a Maryland nonprofit corporation("**Borrower**"), having an address of 5307 Belair Road, Baltimore, M.D. 21206, and NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND, a District of Columbia nonprofit corporation ("**Lender**"), having an address of 1101 Connecticut Ave NW, Suite 700, Washington, D.C. 20036, each of which is sometimes referred to as a "Party" and collectively as the "Parties."

### WITNESSETH

WHEREAS, Borrower and Lender are party to that certain Loan Agreement, dated as of May 11, 2023 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), whereby Lender agreed to lend to Borrower the principal amount of $60,000.00 (the "**Loan**") exclusively for the purpose of financing operational, including payroll, expenses incurred by Borrower in the course of Borrower's business as a community land trust nonprofit dedicated to the preservation of affordable housing (the "Eligible Use");

WHEREAS, pursuant to the Loan Agreement, Borrower executed for the benefit of Lender that certain Promissory Note, dated May 11, 2023, in the amount of SIXTY THOUSAND AND 00/100THS DOLLARS ($60,000.00) (as amended, restated, supplemented, or otherwise modified from time to time, the "**Promissory Note**");

WHEREAS, the Promissory Note provided that the entire unpaid principal balance of the Loan, together with all accrued and unpaid interest thereon, and all other fees, costs and charges, if any, due and payable pursuant to the Loan Documents would be due and payable in full no later than September 30, 2023 (the "**Maturity Date**");

WHEREAS, the Maturity Date was extended to (i) November 29, 2023 pursuant to that certain Loan Modification Agreement, dated September 30, 2023 by and between Borrower and Lender, (ii) January 28, 2024 pursuant to that certain Second Loan Modification Agreement dated November 29, 2023 by and between Borrower and Lender, and (iii) July 28, 2024 pursuant to that certain Third Loan Modification Agreement dated January 28, 2024 by and between Borrower and Lender;

WHEREAS, the Parties desire to further extend the Loan term, and subject to the terms and conditions set forth herein, Lender has agreed to extend the Loan accordingly.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Loan terms and the Loan Documents as follows:

1.      Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

1

2.      The Maturity Date of the Loan is hereby extended from July 28, 2024 to January 28, 2025.

3.      As a condition of Lender's extension of the Maturity Date, upon execution of this Agreement, Borrower agrees to and shall pay to Lender a loan modification fee equal to $150.00.

4.      Except as expressly provided in this Agreement, the Loan Agreement, Promissory Note, and all other Loan Documents remain in full force and effect, unmodified.

5.      This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument and each of which shall be deemed an original.

6.      This Agreement may be duly executed and delivered by a Party by execution and delivery of the signature page of a counterpart to the other Party.  Each party agrees that this Agreement may be electronically signed, and that any electronic signatures appearing on this Agreement are the same as handwritten signatures for the purposes of validity, enforceability, and admissibility.

*[Signatures on following page.]*

2

IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

**BORROWER**:

**North East Housing Initiative, Inc.,**
a Maryland nonprofit corporation,

By: _Garrick Good_
D41527A649AE42A...

Garrick R. Good
Executive Director

**LENDER:**

**National Housing Trust Community Development Fund,**
a District of Columbia nonprofit corporation

By: _Josh Earn_
DB9F7CB009CF49F...

Josh Earn
Vice President

3

# FIFTH LOAN MODIFICATION AGREEMENT

THIS FIFTH LOAN MODIFICATION AGREEMENT (this "**Agreement**") is made and entered into as of January 28, 2025 (the "**Effective Date**") by and between NORTH EAST HOUSING INITIATIVE, INC., a Maryland nonprofit corporation("**Borrower**"), having an address of 5307 Belair Road, Baltimore, M.D. 21206, and NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND, a District of Columbia nonprofit corporation ("**Lender**"), having an address of 1101 Connecticut Ave NW, Suite 700, Washington, D.C. 20036, each of which is sometimes referred to as a "Party" and collectively as the "Parties."

## WITNESSETH

WHEREAS, Borrower and Lender are party to that certain Loan Agreement, dated as of May 11, 2023 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), whereby Lender agreed to lend to Borrower the principal amount of $60,000.00 (the "**Loan**") exclusively for the purpose of financing operational, including payroll, expenses incurred by Borrower in the course of Borrower's business as a community land trust nonprofit dedicated to the preservation of affordable housing (the "Eligible Use");

WHEREAS, pursuant to the Loan Agreement, Borrower executed for the benefit of Lender that certain Promissory Note, dated May 11, 2023, in the amount of SIXTY THOUSAND AND 00/100THS DOLLARS ($60,000.00) (as amended, restated, supplemented, or otherwise modified from time to time, the "**Promissory Note**");

WHEREAS, the Promissory Note provided that the entire unpaid principal balance of the Loan, together with all accrued and unpaid interest thereon, and all other fees, costs and charges, if any, due and payable pursuant to the Loan Documents would be due and payable in full no later than September 30, 2023 (the "**Maturity Date**");

WHEREAS, the Maturity Date was extended to (i) November 29, 2023 pursuant to that certain Loan Modification Agreement, dated September 30, 2023 by and between Borrower and Lender, (ii) January 28, 2024 pursuant to that certain Second Loan Modification Agreement dated November 29, 2023 by and between Borrower and Lender, (iii) July 28, 2024 pursuant to that certain Third Loan Modification Agreement dated January 28, 2024 by and between Borrower and Lender, and (iv) January 28, 2025 pursuant to that certain Fourth Loan Modification Agreement dated July 28, 2024 by and between Borrower and Lender;

WHEREAS, the Parties desire to further extend the Loan term, and subject to the terms and conditions set forth herein, Lender has agreed to extend the Loan accordingly.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Loan terms and the Loan Documents as follows:

1.    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

1

2.      The Maturity Date of the Loan is hereby extended from January 28, 2025 to July 28, 2025.

3.      As a condition of Lender's extension of the Maturity Date, upon execution of this Agreement, Borrower agrees to and shall pay to Lender a loan modification fee equal to $150.00.

4.      Except as expressly provided in this Agreement, the Loan Agreement, Promissory Note, and all other Loan Documents remain in full force and effect, unmodified.

5.      This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument and each of which shall be deemed an original.

6.      This Agreement may be duly executed and delivered by a Party by execution and delivery of the signature page of a counterpart to the other Party.  Each party agrees that this Agreement may be electronically signed, and that any electronic signatures appearing on this Agreement are the same as handwritten signatures for the purposes of validity, enforceability, and admissibility.

*[Signatures on following page.]*

IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.


**BORROWER**:

**North East Housing Initiative, Inc.,**
a Maryland nonprofit corporation,

DocuSigned by:

By:     *Garrick Good*

Garrick R. Good
Executive Director



**LENDER:**

**National Housing Trust Community Development Fund,**
a District of Columbia nonprofit corporation

DocuSigned by:

By:     *Josh Earn*

Josh Earn
Vice President

3