## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL HOUSING TRUST
COMMUNITY DEVELOPMENT FUND

Plaintiff,

v.

NORTH EAST HOUSING INITIATIVE, INC.,

Defendant.

Civil Action No.  1:26-CV-76

## NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff, National Housing Trust Community Development Fund ("Plaintiff"), by undersigned counsel, submits its Memorandum of Law in Support of its Motion for Summary Judgment (the "Motion"), pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h)(1), against North East Housing Initiative, Inc. ("Defendant") (collectively, Plaintiff and Defendant shall be referred to herein as the "Parties").[1]

### PRELIMINARY STATEMENT

Plaintiff entered into two loan agreements and related promissory notes with Defendant (the "Loans").[2] Pursuant to the Loans, Plaintiff loaned Defendant approximately $735,000.[3] Defendant failed to make most of the payments owed under the Loans when due, and without regard to Plaintiff's demand for payment.[4] Defendant does not deny that it received the loaned

---

[1] Underlined Exhibit Numbers in this memorandum reference Exhibit Numbers set forth in the Appendix of Supporting Exhibits to National Housing Trust Community Development Fund's Motion for Summary Judgment, filed contemporaneously herewith.

[2] Ex. 1 (Compl., ECF No. 1), ¶¶ 7, 32; Ex. 2 (Ex. A to Compl., ECF No. 1-1); Ex. 3 (Ex. C to Compl., ECF No. 1-3); Ex. 4 (Answer, ECF No. 10), ¶¶ 7, 32.

[3] Id.

[4] Ex. 1 (Compl., ECF No. 1), ¶¶ 28, 29, 46; Ex. 4 (Answer, ECF No. 10), ¶¶ 28, 29, 46.

funds, that it is obligated to repay the Loans in full and that it failed to do so.[5] Indeed, Defendant's corporate representative, Garrick Good ("Mr. Good" or "Good"), testified under oath pursuant to Fed. R. Civ. P. 30(b)(6) that Defendant understands it owes the funds under both Loans.[6] Because no material dispute of fact exists, Plaintiff requests summary judgment and entry of a monetary judgment in its favor against Defendant in the amount of $631,854.89, plus attorneys' fees in the amount of $55,449.63, and accruing pre-judgment interest, costs and attorneys' fees.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56, Local Civil Rule 7(h)(1), and the Court's Summary Judgment Procedures Order (ECF No. 20), Plaintiff respectfully submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment against Defendant.

**Count I – Breach of Contract for the Initial Loan**

1.    On or about March 7, 2022, Defendant, by Mr. Good, as its executive director, executed a Loan Agreement (the "Initial Loan Agreement") and Revolving Line of Credit Promissory Note (the "Initial Note") in favor of Plaintiff in the principal amount of $675,000. Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 3 (Loan Agreement, Art. I, § 1.2).

2.    Section 3.1 of the Initial Loan Agreement provides that "Borrower shall make all payments of principal and interest under the [Initial] Note as and when the same become due and payable without notice or demand." Ex. 5 (Good Dep. Tr.), 51:2-10; Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 5 (Loan Agreement, § 3.1).

3.    Section 8.1 of the Initial Loan Agreement provides that "[n]o provision or term of this Agreement may be amended, modified, revoked, supplemented, waived or otherwise changed except by a written instrument duly executed by Borrower and Lender and designated as an

---

[5] *Id.*

[6] Ex. 5, (Good Dep. Tr.) 115:16-116:11.

amendment, supplement or waiver." Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 9 (Loan Agreement, § 8.1); Ex. 5 (Good Dep. Tr.), 93:13-94:9.

4.      Section 8.4 of the Initial Loan Agreement provides that the Initial Loan Agreement and Initial Note "constitute and incorporate the entire agreement between Lender and Borrower concerning the subject matter of this Agreement, and supersede any prior agreements between Lender and Borrower concerning the subject matter thereof." Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 10 (Loan Agreement, § 8.4); Ex. 5 (Good Dep. Tr.), 94:11-95:4.

5.      The Initial Note originally bore interest at a non-default rate of 5.5% per annum. Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 19 (Promissory Note, § 3).

6.      Pursuant to the First Loan Modification Agreement dated September 1, 2022, the interest rate was reduced to 5.125%, which rate was carried forward in the Amended and Restated Note. Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 26 (First Loan Modification Agreement, ¶ 2); Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 34 (Amended and Restated Note, § 3).

7.      Under the Amended and Restated Note dated May 11, 2023, the loan matured on September 7, 2023. Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 34-35 (Amended and Restated Note, § 4).

8.      On the maturity date, all unpaid principal, accrued and unpaid interest, and other obligations incurred under the Loan Agreement became due. Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 35 (Amended and Restated Note, § 4).

9.      The Parties executed eight loan modification agreements and an Amended and Restated Revolving Line of Credit Promissory Note (the "Amended and Restated Note"). Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 25–99 (executed modification agreements and Amended and Restated Note); Ex. 5 (Good Dep. Tr.), 65:18–83:5 (Good confirmed executing each modification).

10.    Under the Second Loan Modification Agreement dated May 11, 2023, the principal sum of the loan was increased by $30,000 to a total of $705,000, reflecting the amount of unpaid interest through June 30, 2023. Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 30-31 (Second Loan Modification Agreement, ¶ 2); Ex. 5 (Good Dep. Tr.), 25:9-13 and 32:3-8.

11.    Under the Amended and Restated Note, the Parties agreed that upon default the entire unpaid balance under the Initial Note becomes immediately due and payable. Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 37 (Amended and Restated Note, § 7(j)).

12.    While such event of default is continuing, the Initial Note bears interest at the maximum statutory rate allowable by the District of Columbia (or the maximum rate allowable by law). Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 37 (Amended and Restated Note, § 7(j)).

13.    The Amended and Restated Note further provides that if the Note is placed in the hands of attorneys for collections or is collected through legal proceedings, Defendant must pay all reasonable costs of collecting or attempting to collect the Note, including all reasonable attorneys' fees and disbursements. Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 37 (Amended and Restated Note, § 7(h)).

14.    Under the Eighth Loan Modification Agreement, effective June 1, 2025, the Parties agreed to amend the Initial Note so that the principal amount of the loan shall bear interest at the rate of 6%. Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 98 (Eighth Loan Modification Agreement, ¶ 3).

15.    On or about November 7, 2024, Defendant delivered to Plaintiff a check in the amount of $464,187.94 for the purported purpose of paying down the Initial Loan. Payment of the check was denied for insufficient funds. Ex. 1 (Compl., ECF No. 1), ¶ 20; Ex. 4 (Answer, ECF No. 10), ¶ 20 (admitted).

4

16.     On October 2, 2025, Plaintiff sent a Notice of Default to Defendant informing Defendant that all sums advanced to Defendant under the Initial Loan were immediately due and payable and that the outstanding principal balance of the Initial Loan including accrued interest was $570,782.30. Ex. 6 (Notice of Default for Initial Loan, ECF No. 1-2), at 2; Ex. 5 (Good Dep. Tr.), 33:10-17.

17.     Defendant has not paid Plaintiff the outstanding balance of the Initial Loan. Ex. 4 (Answer, ECF No. 10), ¶ 28 (admitted).

18.     Mr. Good testified that Defendant understands it owes the funds under the Initial Loan, while asserting that mitigating factors prevented Defendant from making payments in accordance with the loan agreement. Ex. 5 (Good Dep. Tr.), 115:16-116:11.

**Count II – Breach of Contract for the Enterprise Loan**

19.     On May 11, 2023, Defendant, by Mr. Good as its executive director, executed a Loan Agreement (the "Enterprise Loan Agreement") and Promissory Note (the "Enterprise Note") in favor of Plaintiff in the principal amount of $60,000. Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 3, 15 (Enterprise Loan Agreement, Art. I, § 1.2); Ex. 5 (Good Dep. Tr.), 23:11-22.

20.     The Enterprise Note bore interest at a non-default rate of 5.5% per annum. Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 16 (Enterprise Note, ¶ 2).

21.     The Parties executed five loan modification agreements for the Enterprise Loan. Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 21–35 (executed modification agreements).

22.     Under the Enterprise Note, the Parties agreed that upon default the entire unpaid balance and interest under the Enterprise Note becomes immediately due and payable. Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 18 (Enterprise Note, § 7(j)).

23. While such event of default is continuing, the Enterprise Note bears interest at the lesser of (i) the Interest Rate plus 5% or (ii) the maximum rate allowable by law. Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 18-19 (Enterprise Note, § 7(j)).

24. The Enterprise Note provides that if the Enterprise Note is placed in the hands of attorneys for collection or is collected through legal proceedings, Defendant must pay all reasonable costs of collecting or attempting to collect the Note, including all reasonable attorneys' fees and disbursements. Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 18 (Enterprise Note, § 6(h)).

25. Under the Fifth Loan Modification Agreement for the Enterprise Loan, the maturity date of the Enterprise Loan was extended to July 28, 2025. Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 34 (Fifth Loan Modification Agreement, ¶ 2); Ex. 5 (Good Dep. Tr.), 38:11-15.

26. On October 2, 2025, Plaintiff sent a Notice of Default to Defendant informing Defendant that all sums advanced under the Enterprise Loan were immediately due and payable and that the outstanding principal balance including accrued interest was $61,072.59. Ex. 7 (Notice of Default for Enterprise Loan, ECF No. 1-4), at 2; Ex. 5 (Good Dep. Tr.), 37:5–38:2.

27. Defendant has not paid Plaintiff the outstanding balance of the Enterprise Loan. Ex. 4 (Answer, ECF No. 10), ¶ 43 (admitted).

28. Mr. Good testified that Defendant understands it owes the funds under the Enterprise Loan. Ex. 5 (Good Dep. Tr.), 115:16–116:2.

**Total Damages**

29. Plaintiff disbursed a total of $675,000 under the Initial Loan in four advances. Ex. 5 (Good Dep. Tr.), 18:19-19:20.

30. Plaintiff disbursed $60,000 under the Enterprise Loan. Ex. 5 (Good Dep. Tr.), 23-11-24:4.

31.     As of October 2, 2025, the date of the notices of default, the outstanding balance owed to Plaintiff under the Loans, including accrued interest, was not less than $631,854.89. Ex. 6 (Notice of Default for Initial Loan, ECF No. 1-2), at 2 ($570,782.30 under the Initial Loan); Ex. 7 (Notice of Default for Enterprise Loan, ECF No. 1-4), at 2 ($61,072.59 under the Enterprise Loan); Ex. 8 (Evert Decl.), ¶ 6.

32.     Default interest has continued to accrue on the Loans since October 2, 2025, pursuant to the terms of the respective Notes. Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 36 (Amended and Restated Note, § 7(j)); Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 18 (Enterprise Note, § 7(j)); Ex. 8 (Evert Decl.), ¶ 7.

33.     Plaintiff placed the Loans in the hands of counsel for collection and commenced this action to recover the unpaid indebtedness. Ex. 8 (Evert Decl.), ¶ 8.

34.     As of May 31, 2026, Plaintiff has incurred attorneys' fees in the amount of $55,449.63 in connection with such collection efforts. Ex. 8 (Evert Decl.), ¶ 8.

## STANDARD OF REVIEW

Summary judgment is appropriate when the movant meets its initial burden to establish that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.[7] Motions for summary judgment should be granted when the court, having reviewed all the evidence offered by both parties and resolving all factual disputes in favor of the non-moving party, determines that there is no genuine triable issue of fact.[8] Summary judgment is appropriate where the dispute involves enforcement of an unambiguous contract, because the

---

[7]Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).
[8]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

interpretation of such a contract is a question of law for the court.[9] In such instances, courts will enforce contracts according to their plain language.[10]

### ARGUMENT

No genuine dispute of material fact exists as to Defendant's liability under the contracts. Under District of Columbia law, the party alleging breach of a contract must prove: (1) a valid contract between the parties; (2) an obligation or duty arising of the contract; (3) a breach of that duty; and (4) damages caused by that breach.[11]

All four elements of Defendant's breach of contract claim are fully established by the Complaint, the exhibits attached thereto, the Declaration of Alice Hamilton Evert, Defendant's Answer to Complaint, and the deposition testimony of Mr. Good.[12]

(1)     Defendant entered into two separate agreements to pay Plaintiff the indebtedness under the Initial Loan Agreement and the Enterprise Loan Agreement. Mr. Good, Defendant's executive director, confirmed execution of the Initial Loan and the Enterprise Loan, as well as all subsequent modifications thereto.[13]

(2)     Defendant has an unconditional, absolute, and irrevocable duty to pay the monetary obligations due under the Initial Loan Agreement and the Enterprise Loan Agreement.[14] The Initial Loan Agreement expressly provides that "Borrower shall make all payments of principal and

---

[9] *See Abdelrhman v. Ackerman*, 76 A.3d 883, 887–89 (D.C. 2013) (whether a contract is ambiguous, and the interpretation of an unambiguous contract, are questions of law); *Parker v. U.S. Trust Co.,* 30 A.3d 147, 150 (D.C. 2011) (a contract is not ambiguous merely because the parties disagree over its interpretation); *Partridge v. Am. Hosp. Mgmt. Co.*, LLC, 289 F. Supp. 3d 1, 21 (D. D.C. 2017) (unambiguous contracts "can and should be interpreted as a matter of law).

[10] *Dyer v. Bilaal*, 983 A.2d 349, 354-55 (D.C. 2009) (courts give contract language its plain meaning and disregard unexpressed subjective intent where the contract is unambiguous); *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968–69 (D.C. 1999) (unambiguous contract language binds the parties); *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 190 (D.C. 2009) (courts construe rights based on the contract as written).

[11] *Moini v. LeBlanc*, 456 F. Supp. 3d 34, 50 (D.D.C. 2020); *Tsintolas Realty v. Mendez*, 984 A.2d 181, 187 (2009).
[12] *See Generally* Exs. 1 - 8.
[13] Ex. 2 (Ex. A to Compl., ECF No. 1-1); Ex. 3 (Ex. C to Compl., ECF No. 1-3)·
[14] Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 5; Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 6.

interest under the [Initial] Note as and when the same become due and payable without notice or demand."[15] The Loans further provides that they may not be amended or modified except by written instrument, and that it constitutes the entire agreement between the parties.[16] The Amended and Restated Note provides that upon default the entire unpaid balance becomes immediately due and payable.[17] The Enterprise Note contains a parallel acceleration provision.[18]

(3)    Defendant materially breached its obligations under the Initial Loan Agreement and the Enterprise Loan Agreement when it failed to make payments owed under the loan documents when due, and without regard to Plaintiff's demand for payment. Defendant did not pay Plaintiff for the amounts due under the Initial Loan Agreement and the Enterprise Loan Agreement. Plaintiff did not receive any payment for the outstanding balance of the Initial Loan. Defendant's executive director and corporate representative, Mr. Good, acknowledged under oath that Defendant owes the funds under both Loans.[19]

(4)    Defendant's failure to make said payments owed under the Initial Loan Agreement and the Enterprise Loan Agreement caused Plaintiff to suffer damages in an amount of not less than $631,854.89, plus pre-judgment interest, costs, and attorneys' fees. Despite demand and notice, Defendant failed to abide by its obligations under the Initial Loan Agreement and the Enterprise Loan Agreement to pay all outstanding indebtedness due. Default interest has continued to accrue on both loans since October 2, 2025, pursuant to the contractual default interest provisions.[20]

---

[15] Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 5; Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 6.
[16] Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 9; Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 10.
[17] Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 37.
[18] Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 18-19.
[19] Ex. 6 (Notice of Default for Initial Loan, ECF No. 1-2); Ex. 7 (Notice of Default for Enterprise Loan, ECF No. 1-4); Ex. 4 (Answer, ECF No. 10), ¶¶ 28, 43; Ex. 5 (Good Dep. Tr.), 115:16-116:2.
[20] Ex. 6 (Notice of Default for Initial Loan, ECF No. 1-2) at 2; Ex. 7 (Notice of Default for Enterprise Loan, ECF No. 1-4) at 2; Ex. 8 (Evert Decl.), ¶¶ 6–8.

None of these facts are in dispute. Therefore, the Initial Loan Agreement and Initial Note, and the Enterprise Loan Agreement and Enterprise Note should be enforced in accordance with their plain, unambiguous terms, and summary judgment should be entered on Counts I and II.

**Plaintiff is Entitled to Attorneys' Fees, Disbursements and Costs.**

Plaintiff is entitled to recover its reasonable attorneys' fees, disbursements, and costs. The Amended and Restated Note provides that, if the Note is placed in the hands of attorneys for collection or is collected through any legal proceedings, Defendant must pay all reasonable costs of collecting or attempting to collect the Note, including reasonable attorneys' fees and disbursements.[21] The Enterprise Note contains the same material fee-shifting provision.[22] Because Defendant defaulted and Plaintiff was required to pursue this action to collect the unpaid indebtedness, Plaintiff is contractually entitled to recover its reasonable attorneys' fees, disbursements, and costs. As of May 31, 2026, Plaintiff has incurred attorneys' fees in the amount of $55,449.63, which continue to accrue.[23]

**Plaintiff is Entitled to Summary Judgment Against Defendant of $631,854.89, Plus Attorney Fees in the Amount of $55,449.63 and Accruing Pre-Judgment Interest, Costs, and Attorneys' Fees.**

As a result of Defendant's breach of the Loans, Plaintiff is entitled to a judgment against Defendant of not less than $631,854.89, plus attorneys' fees in the amount of $55,449.63, and accruing pre-judgment interest, costs and attorneys' fees. This amount represents the outstanding principal balance and accrued interest under both loans as of October 2, 2025, the date of the Notices of Default. Default interest has continued to accrue on both loans since October 2, 2025, pursuant to the terms of the respective Notes: the Initial Note bears default interest at the maximum

---

[21] Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 37 (Amended and Restated Note, § 7(h)).
[22] Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 18 (Enterprise Note, § 6(h)).
[23] Ex. 8 (Evert Decl.), ¶ 8.

statutory rate allowable by the District of Columbia, and the Enterprise Note bears default interest at the lesser of the Interest Rate plus 5% or the maximum rate allowable by law.[24]

## CONCLUSION

The Plaintiff requests that this Court grant its Motion for Summary Judgment as to all Counts in its Complaint against Defendant, and that the Court enter an Order in favor of Plaintiff and against Defendant, providing for: (a) a money judgment against Defendant Northeast Housing Initiative, Inc. in the amount of not less than $631,854.89, plus attorneys' fees of $55,449.63, plus pre-judgment interest, reasonable attorneys' fees, disbursements, and costs; (b) plus interest accruing pursuant to applicable law;[25] (c) reserving Plaintiff's right to pursue any and all further relief available under the Initial Loan Agreement and the Enterprise Loan Agreement; and (d) any such other and further relief to which Plaintiff may show itself justly entitled.

DATED: June 26, 2026

Respectfully submitted,


/s/ Joel W. Ruderman
Joel W. Ruderman
Federal Bar No. 479385
Jennifer L. Kneeland
Federal Bar No. 490522
Watt, Tieder, Hoffar & Fitzgerald, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
(703) 749-1080 (telephone)
E-Mail: jruderman@watttieder.com
E-Mail: jkneeland@watttieder.com

Counsel for Plaintiff, National Housing Trust
Community Development Fund

---

[24] Ex. 2 (Ex. A to Compl., ECF No. 1-1), at 36; Ex. 3 (Ex. C to Compl., ECF No. 1-3), at 18; Ex. 8 (Evert Decl.), ¶ 8.

[25] 28 U.S.C. § 1961.

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 26th day of June 2026, I caused the foregoing to be served via CM/ECF on the following:

Danya C. Cooper, Esquire
Cooper Legal, LLC
1 Olympic Place, Suite 900
Towson, MD 21204
dayna@cooperlegalsolutions.com

*/s/ Joel W. Ruderman*
Joel W. Ruderman

12