**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL HOUSING TRUST
COMMUNITY DEVELOPMENT FUND

        Plaintiff,

       v.

NORTH EAST HOUSING INITIATIVE, INC.,

        Defendant.

Civil Action No.  1:26-CV-76

**PLAINTIFF'S OPPOSITION TO MOTION OF DAYNA C. COOPER, ESQ.**
**TO WITHDRAW APPEARANCE AS COUNSEL FOR DEFENDANT**

Plaintiff National Housing Trust Community Development Fund ("Plaintiff") respectfully

opposes the Motion to Withdraw filed by Dayna C. Cooper, Esq. on June 24, 2026 (the

"Withdrawal Motion"), and states:[1]

Ms. Cooper's motion was filed five days after Plaintiff's Rule 30(b)(6) deposition of

Defendant's corporate designee confirmed that North East Housing Initiative, Inc. ("NEHI") owes

the funds claimed.  During the deposition NEHI admitted that it does not dispute its liability.

Discovery has now concluded in the case.[2]  Further, the Court's deadline for Plaintiff to file its

Motion for Summary Judgment was just this past Friday, and Plaintiff has filed its summary

judgment motion.[3] Defendant's deadline to respond to the summary judgment motion is July 10,

2026. On June 29, 2026, Counsel filed a motion to stay the deadline for Defendant to respond to

Plaintiff's Motion for Summary Judgment pending resolution of the Withdrawal Motion.[4] The

Withdrawal Motion is a calculated attempt to further delay these proceedings in a case where the

---

[1] Dkt. 25.
[2] Dkt. 19.
[3] Dkt. 26.
[4] Defendant's Motion to Stay the Deadline to Respond to Plaintiff's Motion for Summary Judgment Pending
Resolution of Counsel's Motion to Withdraw, or, in the Alternative, for An Extension of Time (DKt. 27).

outcome is not in genuine dispute.  Indeed, Ms. Cooper is NEHI's second counsel, as prior counsel Marc E. Shach, Esq. previously withdrew from this matter.[5]

If granted, Ms. Cooper's Withdrawal Motion will cause NEHI to be left with no counsel at the precise moment Plaintiff's summary judgment motion is pending and ripe for adjudication.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed this breach of contract action on January 12, 2026, to recover obligations due under two loan agreements: an Initial Loan (originally $675,000, modified to $705,000) and an Enterprise Loan ($60,000).[6]  Both loans matured in 2025.[7] Defendant failed to make most of the payments owed under the loans when due despite eight modifications to the Initial Loan and five modifications to the Enterprise Loan, extending the maturity dates over a two-year period.[8]

On February 19, 2026, Defendant filed its Answer, asserting five bare-bones affirmative defenses—Laches, Excuse, Relief Sought is Inequitable, Failure to Mitigate Damages, and Unclean Hands—without any factual support.[9] The Answer was signed by both Ms. Cooper and Mr. Shach (pro hac vice pending).[10]

On June 19, 2026, Plaintiff took the Rule 30(b)(6) deposition of Defendant's corporate designee, Garrick Good, who confirmed under oath that NEHI owes the funds due under both loans,[11] has $37 in its bank accounts,[12] has had all traditional bank accounts closed,[13] and has been

---

[5] Dkt. 15.
[6] Dkt. 1.
[7] *Id.*
[8] *Id.*
[9] Dkt. 10.
[10] *Id.*
[11] Ex. 1, Good Dep. Tr. 115:16 – 116:11.
[12] *Id.* at 145:13-15.
[13] *Id.* at 145:1-4.

denied consolidation loans by five banks.[14] Mr. Good was unable to articulate a factual basis for any of NEHI's affirmative defenses.[15]

On June 26, 2026, Plaintiff filed its Motion for Summary Judgment, seeking judgment of $631,854.89, plus attorneys' fees of $55,449.63, plus pre-judgment interest, costs, and accruing interest and fees.[16] The Court's scheduling order requires Defendant to respond within two weeks. Two days before that filing, Ms. Cooper filed the instant Withdrawal Motion, citing only that "circumstances have arisen that render continued representation unreasonably difficult."[17]

## II.     THE MOTION TO WITHDRAW SHOULD BE DENIED OR, IN THE ALTERNATIVE, STRICTLY CONDITIONED

### A. Granting Withdrawal at This Juncture Would Severely Prejudice Plaintiff

Plaintiff's Motion for Summary Judgment is pending, and Defendant's response is due in two weeks. Granting withdrawal now will disrupt the Court's scheduling order and further delay resolution of a case in which Defendant's own corporate designee has confirmed NEHI owes the funds claimed.

NEHI is a corporate defendant that cannot appear pro se.[18] Mr. Shach previously withdrew pursuant to LCvR 83.6(a) with Ms. Cooper replacing Mr. Shach. If Ms. Cooper's Withdrawal Motion is granted without substitute counsel in place, NEHI will have no representation whatsoever, and the litigation will halt entirely, resulting in an indefinite de facto stay that Defendant could not obtain by motion.

Given NEHI's acknowledged insolvency—$37 in bank accounts, all traditional accounts closed, five banks having denied consolidation loan applications — the prospect of NEHI retaining

---

[14] *Id.* at 137:7 -139:13.

[15] *Id.* at 154:4-11.

[16] Dkt. 26

[17] Dkt. 25, ¶ 1.

[18] *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993) (a corporation must be represented by licensed counsel and may not appear pro se).

substitute counsel is remote. The practical effect of granting this motion is to delay indefinitely a judgment that Defendant itself acknowledges is owed.

### B. The Motion Is Part of a Pattern of Deliberate Delay

The Withdrawal Motion, viewed in the context of this case's history, reflects a continuing pattern in which resolution is deferred while Plaintiff's costs mount:

Defendant obtained eight modifications to the Initial Loan and five modifications to the Enterprise Loan over a two-year period, repeatedly extending maturity dates while failing to repay the loans.

On November 7, 2024, Defendant delivered a check for $464,187.94 that was returned for insufficient funds.[19]

Defendant's five affirmative defenses were asserted without factual support. The Rule 30(b)(6) deposition confirmed that none has a basis in fact or law:

- Mr. Good admitted NEHI owes the funds under both loans and does not dispute the obligation.[20]

- Mr. Good could not identify any provision in the loan agreements or any modification making repayment contingent on receipt of grant funds.[21]

- When asked whether Plaintiff failed to mitigate damages, Mr. Good answered: "No."[22]

- Mr. Good could not explain the "unclean hands" defense and admitted Plaintiff's hands were not unclean.[23]

---

[19] Compl. Dkt. 1 ¶ 20; Answer Dkt. 10 ¶ 20 (admitted).
[20] Ex. 1, Good Dep. Tr. 115:16-116:11.
[21] *Id.* at 51:11-83:15.
[22] *Id.* at 134:18-20.
[23] *Id.* at 136:2-137:15.

- When asked for any other facts supporting the affirmative defenses, Mr. Good testified: "None that I can think of."[24]

Five days after these admissions, Ms. Cooper filed the Withdrawal Motion. The Withdrawal Motion also mischaracterizes the procedural posture, asserting that "summary judgment briefing has not yet commenced" while omitting that the Court's scheduling order required Plaintiff to file its dispositive motion two days later.[25] Viewed in context, the withdrawal continues a pattern of conduct that delays resolution and increases costs to Plaintiff without advancing any legitimate defense.

### C. Ms. Cooper's Stated Grounds Are Insufficient

Ms. Cooper's motion states only that "circumstances have arisen that render continued representation unreasonably difficult."[26]  This conclusory statement provides the Court no basis upon which to evaluate the Withdrawal Motion, particularly given the timing and the prejudice that withdrawal would cause.

Discretion to allow withdrawal of counsel is addressed to the sound discretion of the Court.[27]  Here, Plaintiff's dispositive motion is already pending, discovery is closed, and Defendant's own designee has confirmed liability.  Denial of counsel's motion at this late stage is warranted.

---

[24] *Id.* at 154:4-11.
[25] Dkt. 25, ¶ 4.
[26] Dkt. 25, ¶ 1.
[27] *In re Tutu Wells Contamination Litigation*, 164 F.R.D. 41, 44 (D. V.I. 1995).

### III.    IN THE ALTERNATIVE, THE COURT SHOULD IMPOSE STRICT CONDITIONS

Should the Court be inclined to grant the Motion, to prevent further delay and unnecessary cost, Plaintiff respectfully requests that the Court set a firm deadline of no more than fourteen days for substitute counsel to file a Notice of Appearance.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Withdrawal Motion or, in the alternative, impose a firm deadline of no more than fourteen days for substitute counsel to file a Notice of Appearance. The Court should not permit this motion—or any associated request to stay briefing deadlines—to further delay resolution of a straightforward breach of contract action in which Defendant does not dispute the underlying obligation and Plaintiff's Motion for Summary Judgment is ripe for adjudication.

Dated: June 30, 2026

Respectfully submitted,

/s/ Joel W. Ruderman
Joel W. Ruderman
Federal Bar No. 479385
Jennifer L. Kneeland
Federal Bar No. 490522
Watt, Tieder, Hoffar & Fitzgerald, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
(703) 749-1080 (telephone)
E-Mail: jruderman@watttieder.com
E-Mail: jkneeland@watttieder.com

Counsel for Plaintiff, National Housing Trust
Community Development Fund

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, June 30, 2026, the foregoing document was filed

electronically via the Court's CM/ECF system, which will serve a copy on all registered counsel

of record, including:

Dayna C. Cooper, Esquire
Cooper Legal, LLC
1 Olympic Place, Suite 900
Towson, MD 21204
dayna@cooperlegalsolutions.com


/s/ Joel W. Ruderman
Joel W. Ruderman

# EXHIBIT 1



# Transcript of Garrick Good, Corporate Designee

**Date:** June 19, 2026
**Case:** National Housing Trust, et al. -v- North East Housing Initiative, Inc.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** clientservices@planetdepos.com
**planetdepos.com**
**Michigan #8598 | Nevada #089F | New Mexico #566**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - -    X
NATIONAL HOUSING TRUST        X
COMMUNITY DEVELOPMENT         X
FUND                          X
                             X
          Plaintiff           X
                             X
          V                   X   Case No:
                             X   1:26-CV-76
NORTH EAST HOUSING            X
INITIATIVE , INC.,            X
                             X
          Defendant           X
                             X
- - - - - - - - - - - - -    X
                             X
          Deposition of GARRICK GOOD

          Friday, June 19, 2026

                10:21 a.m.

   Job No.:   635373

   Pages:   1 - 172

   Reported By:  Michael Antonio Rodriquez

rephrase that.

Does it say that "Borrower shall make all payments of principal and interest under the note as and when the same become due and payable without notice or demand"?

A.    Yes, that is correct.

Q.    You understand that to be the agreement -- as part of the agreement of the loan agreement?

A.    Yes.

Q.    Is there any provision in the initial loan agreement that says something to the nature of "the borrower shall repay when due provided that grant funds from City of Baltimore shall have been received"?

A.    I haven't reviewed the documents looking for that specifically, so I want to say I don't know.

Q.    Is it your understanding that any such provision exists in the agreement?

ATTORNEY COOPER:  Objection.

Calls for a legal conclusion.

THE WITNESS:  The discussion that followed was that the whole purpose of the loan was because we knew going in that the -- the City of Baltimore was slow in paying for the reimbursements.  And so it was the understanding that we made the loan agreement to the mirror the grant agreement understanding that we would -- we would -- that the fund would be paid when we got paid.

BY ATTORNEY RUDERMAN:

Q.    Okay.

I would ask you to take a moment, review the agreement and let me -- and disclose to me any provisions that you believe exist in this loan agreement that suggests that the borrower, NEHI, shall repay the loan when due provided that the City of Baltimore or the AHT Funds have been received from NEHI?

ATTORNEY COOPER:  So, I am going to object.  Again, calls for legal conclusion.  To the extent you want him to the read all -- however many pages it is to look for that

specific language, we probably need to go off the record.

ATTORNEY RUDERMAN:  We can take a break.

ATTORNEY COOPER:  Okay.

Could you -- so we'll go off the record.  Could you write that specific language so that we can look for the specific language that you request -- that are you asking about.

ATTORNEY RUDERMAN:  I don't -- are we still on the record?

THE COURT REPORTER:  Still on the record.

ATTORNEY RUDERMAN:  I don't believe that language exists, but I want him to show us where in the document he believes that it is referenced that the payments of the loan is conditional on receipt of the funds from the City of Baltimore, otherwise known as the AHT Funds.

ATTORNEY COOPER:  Okay.

Do you understand that.

THE WITNESS:  I understand the question.  I don't think I have the capabilities to review the agreement for the language to point it out, however, I think that the -- the tenor of the modifications aligned with the understanding that we will be paying when we receive the money, which is why the modifications were made.  And so, that's the essence of my understanding.

ATTORNEY RUDERMAN:  Okay. Notwithstanding, this is a 13-page -- 14-page document.

ATTORNEY COOPER:  Uhm-hmm.

ATTORNEY RUDERMAN:  I ask that we go off the record, that you review the document, and I will come back and ask you the same question and you will -- ask you to answer it after you've reviewed the document.

ATTORNEY COOPER:  Okay.

So I'm going to object because it's my opinion that he has actually answered the

question, but, even if I object, he still has to answer.  So, that -- that's fine.

We can go off the record.

ATTORNEY RUDERMAN:  Off the record.

Thank you.

ATTORNEY COOPER:  Uhm-hmm.

(THEREUPON, the proceedings recessed at 11:14 a.m.)

(THEREUPON, the proceedings resumed at 11:37 a.m.)

BY ATTORNEY RUDERMAN:

Q.    I am going to redirect you back to Deposition Exhibit No. 2.  And we were talking about on Page 5, Paragraph 3.1.

A.    (Complied.)

Okay.

Q.    Okay.

And you had previously said on the record, and I'll repeat it, that this document at 3.1 says, "Borrower shall make all payments in principal and interest under the note as in when the same became due and payable without

notice or demand."

A.    Yes.

Q.    Okay.

And that is part of the initial loan agreement, correct?

A.    Yes.

Q.    Which you executed?

A.    Yes.

Q.    Okay.

Are there any provisions in this initial loan agreement, just stay with that Exhibit No. 2 --

(Simultaneous conversation.)

A.    Uhm-hmm.

Q.    -- that says that repayment is contingent upon AHTF funds, or otherwise known as funds from the City, have been received?

ATTORNEY COOPER:  Objection.

Calls for legal conclusion.

You can answer.

THE WITNESS:  It says on Page 2, "Whereas borrower has obtained grant funding

Transcript of Garrick Good, Corporate Designee
Conducted on June 19, 2026                    57

for the project from the City of Baltimore Affordable Housing Trust Fund and such grant funds will be disbursed to borrower for acquisition and renovation costs for the project on a reimbursement basis.

"Whereas the amounts disbursed under a loan agreement shall be used by the borrower to acquire and renovate the property in brief financing from the AFTH (sic) grant in the event that reimbursements from the AHTF grant are delayed."

BY ATTORNEY RUDERMAN:

Q.    Those two provisions that you read to me do not state that repayment is contingent on receiving those funds; is that correct?

ATTORNEY COOPER:  Objection.

Asked and answered.

You have to give me an opportunity to object --

(Simultaneous conversation.)

THE WITNESS:  Okay, okay.

Transcript of Garrick Good, Corporate Designee
Conducted on June 19, 2026                    58

ATTORNEY COOPER:  -- so take some time.

Objection.

Asked and answered.

Objection.

Calls for legal conclusion.

Objection.

The document speaks for itself.

Go ahead.

You can answer.

THE WITNESS:  I provided my answer.

BY ATTORNEY RUDERMAN:

Q.    And what is that answer?

A.    That my -- it's my interpretation is -- it says, "Whereas borrower has obtained grant funding from the project from the City of Baltimore Affordable Housing Trust Fund, the AHTF grant, and such grant funds will be disbursed to the borrower for acquisition and renovation costs for the project on a reimbursement basis.

"Whereas the amounts disbursed under

the loan shall be used by borrower to acquire and renovate the property and bridge financing from the AHTF grant in that reimbursements from that grant are delayed."

Q.    Are there any other provisions within the loan agreement that you believe suggest or support an argument that repayment is contingent upon receipt of the AHT funds?

ATTORNEY COOPER:  Objection.

Calls for legal conclusion.

You can answer.

THE WITNESS:  Not that I see at this time.

BY ATTORNEY RUDERMAN:

Q.    You spent time reviewing the document?

A.    I have reviewed it, and I have alerted to what recitals that I found on Page 2 that I thought were answering the questions you asked.

Q.    Okay.

A.    And I stick with that as my answer.

Q.    And what is that answer?

ATTORNEY COOPER:  Could you read it back for the record, please?

(WHEREUPON, the court reporter read back.)

THE COURT REPORTER:  This one?

ATTORNEY COOPER:  Yes.

(WHEREUPON, the court reporter read back.)

(Simultaneous conversation.)

ATTORNEY COOPER:  And he said that -- that he read the agreement and that it says --

(Simultaneous conversation.)

ATTORNEY RUDERMAN: -- under the recitals.

ATTORNEY COOPER:  Right.  And he said that that was his interpretation.

ATTORNEY RUDERMAN:  Okay.

And then I asked if there are any other provisions.  And then he said, I don't know exactly what he said, but he said

something to the extent of based on what I recall or what I saw.

THE WITNESS:  No.  I said what I reviewed, I have stated that under the recitals.

ATTORNEY RUDERMAN:  Okay.

Let's go back on the record.

Are we back on the record?

We have been on the record.

BY ATTORNEY RUDERMAN:

Q.    Okay.

Let me just --

(Simultaneous conversation.)

ATTORNEY COOPER:  Or maybe you should reask or ask it differently.

BY ATTORNEY RUDERMAN:

Q.    Let me just -- we are going to start from the beginning.

In preparation for this deposition, you've reviewed the loan agreement; is that correct?

A.    That is correct.

Transcript of Garrick Good, Corporate Designee
Conducted on June 19, 2026                    62

Q.    Okay.

And during the course of this deposition, we just took approximately 15-, 30-minute break for you to review the loan agreement; is that correct?

A.    That is correct.

Q.    Okay.

And based on your review of the document, other than the two whereas clauses that you read into the record from Page 2 of the loan agreement, are there any other provisions in which payment of the loan is contingent upon receipt of the grant funds?

ATTORNEY COOPER:  Okay.

So I'm going to object for calls for a legal conclusion, asked and answered, and I'm also going to object to vague.  Because you said are there any other -- you said are there any other provisions.

His very first answer was a response about his interpretation of the document as a whole, and then you later asked about

specifics.

So I feel like he has answered the question about other provisions.

ATTORNEY RUDERMAN:  Okay.

ATTORNEY COOPER:  Go ahead.

ATTORNEY RUDERMAN:  I'm going to ask you not to make any more speaking objections, just because I think it's muddling up the record, and I want to get this clear because this is important.

ATTORNEY COOPER:  Okay.

Maybe we should go off the record then to get clarity.  Because my position is he has asked -- he answered the question.

ATTORNEY RUDERMAN:  Okay.

I understand that, but I don't think he has answered.  And I just want to make sure we have it clear on the record, okay.

THE WITNESS:  I have my answer.

BY ATTORNEY RUDERMAN:

Q.    Can you provide your answer to me? Let me ask the question again.

A.    Go for it.

Q.    Please identify any provisions in the loan agreement other than the two whereas clause paragraphs you read into the record previously that you believe indicate repayment of the loan was contingent upon receipt of the AHTF grant funds.

ATTORNEY COOPER:  I am just going to reiterate those objections.

THE WITNESS:  And I'm going to answer the same and say that those recitals were my answer previously mentioned that you referenced.  That is my answer.

BY ATTORNEY RUDERMAN:

Q.    And no other provisions?

ATTORNEY COOPER:  Objection.

Mischaracterizes his testimony.

BY ATTORNEY RUDERMAN:

Q.    You can answer.

A.    Okay.

The recitals are what -- are my answer.

Q.    And no other provision?

A.    I don't see any at this time.

Q.    Okay.

Thank you.

During the break, you were shown the loan modifications, okay?  I'm going to ask you a general overall question.

A.    Uhm-hmm.

Q.    And let me rephrase that.  Let's -- let's go through each one.  Okay.  I'm going to ask you to identify what has been marked as Deposition Exhibit No. 9.

A.    Okay.

(THEREUPON, Exhibit 9 was marked by the court reporter.)

THE WITNESS:  You asked me to do what now?

BY ATTORNEY RUDERMAN:

Q.    Do you recognize this document?

A.    Yes, I do.

Q.    What is this document?

A.    Loan Modification Agreement that's

dated September 1st, 2022.

Q.    And is that document signed by you?

A.    It is.

Q.    Okay.

Are you familiar with the document?

A.    I am.

Q.    Okay.

Do you believe this to be a true and accurate copy of the document?

A.    I do.

Q.    Okay.

I'm now going to ask -- direct you to let me know any provisions within Exhibit No. 9, the loan Modification Agreement, that reflects that repayment of the loan is contingent upon receipt of the grant funds from AT -- AHTF?

ATTORNEY COOPER:  Objection.

You have to give me a chance to object.

Just wait a second.

THE WITNESS:  Sorry.

ATTORNEY COOPER:  Objection.

Calls for a legal conclusion.

THE WITNESS:  I would point or direct your attention to Page 2, 4(d), and it says, "The following is hereby added:  Section 6.2(d) of the loan agreement."  And it says, "Promptly following disbursement of each advance, borrower shall submit to lender a copy of the submitted AFTH grant reimbursement request equivalent to the amount of the advance."

BY ATTORNEY RUDERMAN:

Q.    And with respect to that provision, is the requirement to provide documentation occur before or after the loan disbursement?

A.    After.

Q.    Are there any other provisions in this document that you believe reflect that repayment of the loan is conditional upon receipt of the AHTF funds?

ATTORNEY COOPER:  Objection.

Calls for legal conclusion.

You can answer.

THE WITNESS:  And I will direct to Page 3, No. 8, and it says, "Except whereas expressly provided in this agreement, the loan agreement promissory note and all other loan documents remain in full force and effect unmodified."  Then I would refer back to the recitals in the original document that we talked about as Exhibit 2.

BY ATTORNEY RUDERMAN:

Q.    Are there any other provisions in this Exhibit No. 9 that you believe reflect that repayment of the loan is conditional upon receipt of the AHTF funds?

ATTORNEY COOPER:  I'm going to object.  So let me just, so that I don't hold up to -- can we just agree that all of those questions along that line of questioning that I object to as a legal conclusion instead of having to object to each one?

ATTORNEY RUDERMAN:  I can note for the record that you're making a --

Transcript of Garrick Good, Corporate Designee
Conducted on June 19, 2026                    69

(Simultaneous conversation.)

ATTORNEY COOPER:  Like a general objection to --

(Simultaneous conversation.)

ATTORNEY RUDERMAN:  -- a general objection to those questions.

ATTORNEY COOPER:  Okay.

ATTORNEY RUDERMAN:  I don't agree that those questions are accurate.

ATTORNEY COOPER:  No.  That's right.

ATTORNEY RUDERMAN:  Objections.

ATTORNEY COOPER:  So I won't continue to object, and we can just --

(Simultaneous conversation.)

ATTORNEY RUDERMAN:  Okay.

THE WITNESS:  Okay.

My answer is, "no."

BY ATTORNEY RUDERMAN:

Q.    Now, I'm going to direct you to Deposition Exhibit No. 3.  This was something given to you previously.

A.    Okay.

Transcript of Garrick Good, Corporate Designee
Conducted on June 19, 2026                    70

Q.    Okay.

And this is the second loan modification; is that correct?

A.    Yes.

Q.    And that was executed by you?

A.    Yes.

Q.    Okay.

Are there any provisions in this document that reflect that repayment of the initial loan was contingent upon receipt of the AHTF grant funds?

A.    I will direct you to Page 1.  It says, "Whereas funding under the Affordable Housing Trust Fund grant is expected to resume in June 2023" as being the purpose for the modification.

Q.    Okay.

Are there any other provisions in that document that indicate that repayment of the loan is contingent upon receipt of the AHTF grant fund?

A.    Not that I see upon this review.

Transcript of Garrick Good, Corporate Designee
Conducted on June 19, 2026                    71

Q.    Okay.

And you have reviewed this document in advance of the deposition, correct?

A.    Yes.

Q.    And have you had an opportunity to review the document during this deposition?

A.    Yes, but I wasn't looking for that specific answer.

Q.    Do you want additional time to look at the document?

A.    No.

Q.    I now direct you to what has been marked as Exhibit 10.

(THEREUPON, Exhibit 10 was marked by the court reporter.)

BY ATTORNEY RUDERMAN:

Q.    Can you -- do you recognize this document?

A.    I do.

Q.    What is this document?

A.    The third loan Modification Agreement for said loan.

Q.    Was this document signed by you?

A.    It was.

Q.    Do you believe this document to be a true and accurate copy of the third loan Modification Agreement?

A.    I do.

Q.    And you have had an opportunity to review this document?

A.    I have.

Q.    Can -- are there any provisions within this loan -- third loan Modification Agreement that indicate that repayment of the initial loan is contingent upon receipt of the AHTF grant fund?

A.    Id make reference to Page 1 where it says, "Whereas payments to the borrower by the City of Baltimore, Maryland, under the Affordable Housing Trust Fund grant, the AHTF grant, awarded to borrower have been delayed and will not be received by borrower in time to be used to repay the loan by the maturity date."

That was the purpose of the modification.

Q.    Are there any other provisions in this agreement that you believe indicate that repayment of the loan is conditional upon receipt of the AHTF grant funds?

A.    Not that I see upon this review.

Q.    I'm going to now direct attention to what has been marked as Deposition Exhibit No. 11.

(THEREUPON, Exhibit 11 was marked by the court reporter.)

BY ATTORNEY RUDERMAN:

Q.    Do you recognize this document?

A.    I do.

Q.    What is this document?

A.    This is the fourth loan agreement modification that was executed November 6, 2023.

Q.    It was executed by you?

A.    Yes, it was.

Q.    Okay.  Does -- is this document a

true and accurate copy of the document?

A.    Yes.

Q.    I would ask you to show -- or let me start over.

Is there any provisions in this document that indicate that repayment of the initial loan was contingent upon receipt of the AHTF grant funds?

A.    I would direct your attention to Page 1.  It says, "Whereas the promissory note provided that the entire unpaid principal balance of the loan, together with all accrued and unpaid interest thereof and all other fees, costs, and charges, if any, due and payable, pursuant to loan documents, will be due and payable in full no later than September 7, 2023, the maturity date.

"Whereas the maturity date was extended to November 6, pursuant to that certain third loan Modification Agreement dated September 7th, and between borrower and lender.

Whereas parties desire to further extend the loan term, and subject to terms and conditions as set forth, lender has agreed to extend the loan accordingly."

And that's due to the non-reimbursement.

Q.    Okay.

Are there any other provisions in this document that reflect that repayment of the loan is conditional upon receipt of the AHTF grant funds?

A.    Not that I see in this review.

Q.    I'm going to direct you again to look at that same document.

A.    (Complied.)

Q.    The last paragraph -- let's see.

Let's move on to Deposition Exhibit No. 5.

ATTORNEY COOPER:  No. 5?

ATTORNEY RUDERMAN:  Oh, I'm sorry. No. 12.

(THEREUPON, Exhibit 12 was marked by

the court reporter.)

A.    Okay.

BY ATTORNEY RUDERMAN:

Q.    Do you recognize what has been marked as Deposition Exhibit No. 12?

A.    Yes.

Q.    What is that document?

A.    It's the fifth loan Modification Agreement dated January 5th, 2024.

Q.    Okay.

Did you sign that document?

A.    I did.

Q.    Okay.

Do you understand this document to be a true and accurate copy of the fifth loan modification?

A.    As far as I can tell, yes.

Q.    Can you identify in this document any provisions that you believe indicate that repayment of the initial loan is contingent upon receipt of the AHTF grant funds?

A.    I would direct you to Page 2, No. 2.

It says, "The maturity date of the loan is hereby extended to the earlier of, (1), borrower's receipt of the Affordable Housing Trust Fund grant funds for July 5th, 2024."

Q.    Are there any other provisions in this document that you believe reflect that repayment of the initial loan is contingent upon receipt of the AHTF grant funds?

A.    Not that I see in this review.

Q.    That -- I am now directing you to Paragraph 2 of that document.

You just read that paragraph, correct?

A.    That is correct.

ATTORNEY COOPER:  Hold on.  Wait. You said Paragraph 2.  So the first "whereas" clause or --

(Simultaneous conversation.)

ATTORNEY RUDERMAN:  No.  Paragraph 2 on Page 2.

ATTORNEY COOPER:  Oh, okay. Uhm-hmm.

BY ATTORNEY RUDERMAN:

Q.    I'm directing you to Paragraph 2.

A.    (Complied.)

Q.    If grant funds were not received by July 5, 2024, what did you understand to occur on that date?

ATTORNEY COOPER:  Objection.

Calls for speculation.

Go ahead.

THE WITNESS:  What -- the question is what did I expect to occur?

BY ATTORNEY RUDERMAN:

Q.    What did you understand occurred on July 5th, 2024, if the grant funds were not issued?

ATTORNEY COOPER:  I withdraw my objection.

Go ahead.

THE WITNESS:  We would do an additional amendment, as we did with 13.

BY ATTORNEY RUDERMAN:

Q.    Is that what the document says?

A.      It does not say that, but --

        (Simultaneous conversation.)

        ATTORNEY COOPER:  Objection.

        Asked and answered.

        THE WITNESS:  -- it was -- was what
I would expect.

BY ATTORNEY RUDERMAN:

     Q.      Does the document provide that if
July 5th occurs, and the grant funds are not
received, there would be a further
modification of the loan agreement?

        ATTORNEY COOPER:  Objection.  The
document speaks for itself.

        Go ahead.

        THE WITNESS:  There -- the dialogue
that I had been having with Ben Zimmitti also
said that there will -- there will be an
extension if we did not meet that date.

BY ATTORNEY RUDERMAN:

     Q.      Are there any statements in this
document (indicating)?

     A.      Not that I see at this time.

Transcript of Garrick Good, Corporate Designee
Conducted on June 19, 2026                    80

Q.    And you've reviewed this document, correct?

A.    I have reviewed it, yes.

Q.    Okay.

I'm going to now direct your attention to what has been -- what has been marked as Deposition Exhibit No. 13.

(THEREUPON, Exhibit 13 was marked by the court reporter.)

A.    Okay.

BY ATTORNEY RUDERMAN:

Q.    Do you recognize this document?

A.    Yes, I do.

Q.    What is this document?

A.    This is the sixth loan Modification Agreement dated June -- July 5th, 2024.

Q.    Did you sign this document?

A.    I did.

Q.    Do you understand this document to be a true and accurate copy of the sixth loan Modification Agreement?

A.    Yes.

Q.    I would now ask you to inform me of any provisions within this loan Modification Agreement that indicate that repayment of the loan is contingent upon receipt of the AHTF grant funds.

A.    I don't see any.

Q.    I now direct your attention to Deposition Exhibit 14.

(THEREUPON, Exhibit 14 was marked by the court reporter.)

THE WITNESS:  Okay.

BY ATTORNEY RUDERMAN:

Q.    What do you -- do you recognize this documents?

A.    I do.

Q.    What is this document?

A.    It's the seventh loan Modification Agreement dated January 5th, 2025.

Q.    And did you sign this agreement?

A.    Yes, I did.

Q.    Okay.

And do you believe this to be a true

and accurate copy of the seventh loan Modification Agreement?

A.     Yes.

Q.     Okay.

Are there any provisions in this loan Modification Agreement that you believe indicate that repayment of the loan is conditional upon receipt by NEHI of the AHTF grant funds?

A.     I'm just -- give me one second.

No, I don't see any.

Q.     And I'm now going to direct your attention to what has been marked as Deposition Exhibit 15.

A.     (Complied.)

(THEREUPON, Exhibit 15 was marked by the court reporter.)

BY ATTORNEY RUDERMAN:

Q.     Do you recognize this documents?

A.     Yes, it's the eighth loan Modification Agreement dated May 2025. Doesn't have a date.

Q.    Did you execute this document?

A.    Yes.

Q.    Do you believe that this document was executed in May of 2025?

A.    Yes.

Q.    Do you believe this document to be a true and accurate copy of the eighth loan Modification Agreement?

A.    Yes.

Q.    Okay.

Are there any provisions in this document that you believe indicate that repayment of the loan is contingent upon receipts of the AHTF grant funds?

A.    No.

Q.    I'm going to draw your attention, again, back to what was marked as Deposition Exhibit No. 2.

A.    (Complied.)

ATTORNEY COOPER:  You said Exhibit No. 2?

ATTORNEY RUDERMAN:  No. 2.  I

should not be any speaking objection, and that was clearly a speaking objection.

So I would ask that you refrain from speaking objection at this point.

ATTORNEY COOPER:  Okay.

That's -- objection.

Legal conclusion.

BY ATTORNEY RUDERMAN:

Q.  You can answer the question.

A.  It's my belief excuse would -- is not to dispute that we owe the funds.  It's just that there were mitigating factors that prevented us from being able to make the payments in accordance with the outlined agreement.

Q.  So do you understand as of today that you owe the funds?

A.  Yes.

Q.  And that is the funds under the initial loan agreement, correct?

A.  Yes.

Q.  And also under the Enterprise loan--

(Simultaneous conversation.)

A.    Enterprise loan.  Yes.

THE COURT REPORTER:  Excuse me.

You are mixing me up with crosstalk.

BY ATTORNEY RUDERMAN:

Q.    If you can just wait until I finish my questions.

A.    Okay.

Q.    And you understand that NEHI owes the funds under the Enterprise Loan Agreement?

A.    That is correct.

Q.    When do you expect to repay the loan?

ATTORNEY COOPER:  Objection.

Speculation.

Calls for speculation.

THE WITNESS:  As soon as the funds become available.

BY ATTORNEY RUDERMAN:

Q.    From what source?

A.    As I stated earlier, the City suspended our reimbursements and all activity

decision to pause not only the grants tied to this agreement, but all of our grants that we had citywide.

We have a portfolio of grants that were -- that were huge.  I mean, it was a lot.  It was over $3 million worth of contracts, and to have those all stop with no explanation, then, you know, it just caused a number of issues that -- that we have as defenses as -- that would be under our control.

Because up until February 2nd, it hadn't even been communicated to us what anyone was doing or any opportunity to provide explanation or to be able to seek any kind of -- negotiate any remedies for us to be able to do anything we were supposed to do.

BY ATTORNEY RUDERMAN:

Q.    Is it your position that the plaintiff failed to mitigate be damages?

A.    No.

ATTORNEY COOPER:  Objection --

Objection.

Q.    Okay.

I'll like to direct you to Page 3, at the bottom, where it says, "Affirmative Defenses," Line 5, "unclean hands?"

Do you see that?

A.    I do.

Q.    Can you describe the factual basis for your affirmative defense of unclean hands?

ATTORNEY COOPER:  Objection.

Calls for a legal conclusion.

Go ahead.

THE WITNESS:  I want to decline to answer because I don't know how to explain that, unclean hands.

BY ATTORNEY RUDERMAN:

Q.    What do you understand unclean hands to be?

A.    That this decision or -- or our default did not come from any action of ours, just the mitigating factors that I explained; otherwise of being prevented to be able to make the payments.

Q.    Are you suggesting in any manner that plaintiff's hands were uncleaned?

ATTORNEY COOPER:  Objection.

Calls for legal conclusion.

A.    No.

BY ATTORNEY RUDERMAN:

Q.    Are you currently making any attempt to raise funds for NEHI?

A.    We have --

(Simultaneous conversation.)

ATTORNEY COOPER:  Objection.

Broad.

Vague.

Go ahead.

THE WITNESS:  We, as I reported earlier, made several attempts to look at a consolidation loan for legacy debt that included NHT and other lenders.  Those have been about five attempts in which we were able to -- I mean that they all ended up being consequently denied.

We have made a couple of requests

Transcript of Garrick Good, Corporate Designee
Conducted on June 19, 2026                        138

and have active engagement and conversations with a couple of people to see if we can actually get donations extended to us, but nothing's been -- nothing's happened at this point.

BY ATTORNEY RUDERMAN:

Q.    And you referenced five attempts, correct?

A.    To banks, yes.

Q.    Can you tell me which banks these attempts were made from?

A.    Yes.  The first one was National Capital Bank, which is the bank we were actually working with.  That was the first bank.

They actually took us through the process for an entire year, and that was why -- so we have -- this first judgment was from JPMorgan Chase.  JPMorgan Chase told us that we have to have the line to rest for 30 days.  National Capital Bank told us they would actually consolidate and -- and wind

that into one -- one instrument.  That didn't happen.

Our next lender that we approached was Capital Bank.  We also made CFG Bank.  The fourth was TD Bank, and the fifth was -- what's the name of it? -- U.S. Bank.

Q.    And they have all denied --

(Simultaneous conversation.)

A.    They have --

(Simultaneous conversation.)

Q.    -- your request?

A.    We have declines from each of them, yes.

Q.    There is none -- no pending request?

A.    We have -- we have a -- no, there are no pending requests.

Q.    You indicated that you are also trying to fundraise through individuals?

A.    Yes.

Q.    Are there specific individuals that you have spoken to about fundraising?

A.    None that I want to put on the

Transcript of Garrick Good, Corporate Designee
Conducted on June 19, 2026                    145

BY ATTORNEY RUDERMAN:

Q.    Does it have any open bank accounts?

A.    No.  They -- actually, all of our accounts have been closed.  We have a fintech account that we are operating from at this time.

Q.    What is a fintech account?

A.    An online account with, like, Mercury Bank is the name of it, so it's like a -- it's not a traditional bank.  It's an online bank account.

Q.    Okay.

And how much funds are in that account?

A.    $37.

Q.    What is the most that's ever been in that account?

A.    At one time?

Q.    Yes.

A.    Well, we just opened it in -- in, like, April, so probably maybe $50,000.

Q.    Have the bank -- have the bank

the record.

ATTORNEY COOPER:  Sorry.

BY ATTORNEY RUDERMAN:

Q.    Other than the testimony you have provided today, are there any other facts that support any of NEHI's affirmative defenses?

ATTORNEY COOPER:  Objection.

Calls for legal conclusion.

Go ahead.

THE WITNESS:  Not -- none that I can think of.  I do have one thing I probably should clear -- I want to clarify for the record.  You asked if we had any additional assets, and I did not acknowledge this only because it's frozen.

So the portion of the money that's frozen as a part of the asset forfeiture, I did not include as an asset.  However, it's frozen, but it's still in our possession in a frozen account -- a frozen account.  And it's approximately $2 million -- $2.2 million that's frozen that we don't have access to.

CERTIFICATE OF REPORTER

I, Michael A. Rodriquez, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by the Notary Public; that the testimony of said witness was taken down by me in stenotype and thereafter reduced to typewriting under my supervision; that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and further, that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

_____
MICHAEL A. RODRIQUEZ, RPR/CP/RMR
    FREELANCE VERBATIM REPORTER