# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL HOUSING TRUST | * | |
| COMMUNITY DEVELOPMENT FUND | * | |
| *Plaintiff,* | * | |
| | * | |
| v. | * | Case No.: 1:26-cv-00076-MAU |
| | * | |
| NORTH EAST HOUSING INITIATIVE, | * | |
| INC. * | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*   \* \* \* \* \* \* \* \* \* \* \* \* \*

## DECLARATION OF GARRICK R. GOOD IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I, Garrick R. Good, declare as follows:

1.      I am the President of North East Housing Initiative, Inc. ("NEHI"), the Defendant in this action, and its Rule 30(b)(6) corporate designee. I have held the title of President since July 2025. At the time the Loan Agreement and Initial Note were executed in March 2022, and at the time the Enterprise Loan Agreement and Enterprise Note were executed in May 2023, I held the title of Executive Director of NEHI. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently to them.

2.      I submit this declaration in support of NEHI's Opposition to Plaintiff National Housing Trust Community Development Fund's ("NHT") Motion for Summary Judgment.

### NHT's Representation Regarding a Further Extension

3.      Over the course of the lending relationship, NEHI worked with a succession of NHT representatives. My initial point of contact at NHT was Klade Hare. Ms. Hare was succeeded by Alexandra Cabal, who was in turn succeeded by Ben Zimmitti. Mr. Zimmitti administered the Initial Loan for the majority of the relationship and was my principal point of contact at NHT concerning maturity extensions and loan modifications.

4.      In connection with the Fifth Loan Modification Agreement, which extended the maturity date of the Initial Loan to July 5, 2024, I had direct conversations with Mr. Zimmitti regarding what would occur if the AHTF grant funds were not received by that date. Based on those

conversations, I understood that NHT would grant a further extension of the Initial Loan if the AHTF grant funds had not been received by July 5, 2024.

### Reliance and Detriment

5.      I understood, based on Mr. Zimmitti's statements and on NHT's repeated course of granting formal written modifications over a period of more than three years, that NHT intended to continue working with NEHI toward repayment rather than to accelerate the Loans. In reliance on that understanding, I met with Mr. Zimmitti on a weekly basis and provided him with regular updates regarding the status of repayment from the City of Baltimore, while NEHI simultaneously pursued alternative repayment options. NEHI continued to pursue debt consolidation financing with National Capital Bank over a period of approximately one year, and separately pursued refinancing through JPMorgan Chase and U.S. Bank, rather than seeking emergency or alternative sources of funds. NEHI did so with an understanding of the carrying costs associated with each successive extension, and accepted those costs because it understood NHT intended to continue accommodating repayment through the anticipated grant proceeds and refinancing. Had NHT informed NEHI at any point that it intended to accelerate rather than extend, NEHI would have solicited funds directly from private donors in order to preserve NEHI's standing with NHT and prevent a cascade of defaults across NEHI's other obligations.

### The October 2025 Default Notices

6.      In the weeks before NHT issued its October 2, 2025 default notices, I was in direct communication with Andrea Sevanto, an NHT representative, regarding a further extension of the Initial Loan. On or about August 2, 2025, Ms. Sevanto introduced herself to me and stated that NHT wanted to do everything they can to work with us, and that NHT was in business to support organizations like ours. She requested time to review NEHI's file and get up to speed. No default was declared during this period, and I received no communication from NHT indicating that its position had changed. NEHI never received a further written modification agreement. Instead, and without any intervening notice or warning, NEHI received the October 2, 2025 default notices.

**Payment Status**

7.      The personal check I issued in April 2025, intended as interest service on both loans, did not clear. That failure coincided with a period in which my personal bank accounts were being closed, and reflects an account access issue rather than a decision not to pay. To my knowledge, this check was never replaced.

**DHCD Certification Change**

8.      The Baltimore City Department of Housing and Community Development ("DHCD") attributed a compliance shortfall to NEHI under its Affordable Housing Trust Fund ("AHTF") grant that was, in fact, of DHCD's own making. Partway through the grant term, DHCD changed the process by which household eligibility was certified for purposes of the grant. NEHI had previously been permitted to certify household eligibility itself, based on supporting documentation, before submitting reimbursement requests. On or about January 3, 2024, DHCD instead required that the City itself certify each household's eligibility at the point of enrollment, rather than accepting NEHI's certification. This change was made after NEHI had already begun performance under the existing process, and it, rather than any action by NEHI, caused the shortfall DHCD later cited, which in turn delayed reimbursement and closeout of the grant.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on _____August 10_____, 2026, at _____Baltimore City_____, Maryland.

/s/ Garrick R. Good
—————————————————

Garrick R. Good