**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND *Plaintiff*, | * * * * | |
| v. | * * | Case No.: 1:26-cv-00076-MAU |
| NORTH EAST HOUSING INITIATIVE, INC. * *Defendant.* | * * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      On or about March 7, 2022, Defendant, by Mr. Good, as its executive director, executed a Loan Agreement (the "Initial Loan Agreement") and Revolving Line of Credit Promissory Note (the "Initial Note") in favor of Plaintiff in the principal amount of $675,000.

*Response: Admitted.*

2.      Section 3.1 of the Initial Loan Agreement provides that "Borrower shall make all payments of principal and interest under the [Initial] Note as and when the same become due and payable without notice or demand."

*Response: Admitted.*

3.      Section 8.1 of the Initial Loan Agreement provides that "[n]o provision or term of this Agreement may be amended, modified, revoked, supplemented, waived or otherwise changed except by a written instrument duly executed by Borrower and Lender and designated as an amendment, supplement or waiver."

*Response: Admitted that Section 8.1 contains the quoted language. Disputed to the extent this paragraph implies this provision forecloses NEHI's waiver and estoppel defenses as a matter of law.*

**4.**     Section 8.4 of the Initial Loan Agreement provides that the Initial Loan Agreement and Initial Note "constitute and incorporate the entire agreement between Lender and Borrower... and supersede any prior agreements."

*Response: Admitted that Section 8.4 contains the quoted language.*

**5.**     The Initial Note originally bore interest at a non-default rate of 5.5% per annum.

*Response: Admitted.*

**6.**     Pursuant to the First Loan Modification Agreement dated September 1, 2022, the interest rate was reduced to 5.125%, which rate was carried forward in the Amended and Restated Note.

*Response: Admitted.*

**7.**     Under the Amended and Restated Note dated May 11, 2023, the loan matured on September 7, 2023.

*Response: Admitted that the Amended and Restated Note states this maturity date. Admitted that this maturity date was subsequently extended by the Third through Eighth Loan Modification Agreements.*

**8.**     On the maturity date, all unpaid principal, accrued and unpaid interest, and other obligations incurred under the Loan Agreement became due.

*Response: Admitted that the Amended and Restated Note so provides.*

**9.**     The Parties executed eight loan modification agreements and an Amended and Restated Revolving Line of Credit Promissory Note.

*Response: Admitted.*

10.     Under the Second Loan Modification Agreement dated May 11, 2023, the principal sum of the loan was increased by $30,000 to a total of $705,000, reflecting the amount of unpaid interest through June 30, 2023.

>   **Response:** *Admitted.*

11.     Under the Amended and Restated Note, the Parties agreed that upon default the entire unpaid balance under the Initial Note becomes immediately due and payable.

>   **Response:** *Admitted.*

12.     While such event of default is continuing, the Initial Note bears interest at the maximum statutory rate allowable by the District of Columbia.

>   **Response:** *Admitted.*

13.     The Amended and Restated Note further provides that if the Note is placed in the hands of attorneys for collections..., Defendant must pay all reasonable costs of collecting..., including all reasonable attorneys' fees.

>   **Response:** *Admitted that the Note so provides. Disputed as to reasonableness and amount of any fees claimed. See Response to ¶ 34, below*

14.     Under the Eighth Loan Modification Agreement, effective June 1, 2025, the Parties agreed to amend the Initial Note so that the principal amount of the loan shall bear interest at the rate of 6%.

>   **Response:** *Admitted.*

15.     On or about November 7, 2024, Defendant delivered to Plaintiff a check in the amount of $464,187.94 for the purported purpose of paying down the Initial Loan. Payment of the check was denied for insufficient funds.

>   **Response:** *Admitted.*

16.    On October 2, 2025, Plaintiff sent a Notice of Default to Defendant informing Defendant that all sums advanced under the Initial Loan were immediately due and payable and that the outstanding principal balance including accrued interest was $570,782.30.

*Response: Admitted.*

17.    Defendant has not paid Plaintiff the outstanding balance of the Initial Loan.

*Response: Admitted.*

18.    Mr. Good testified that Defendant understands it owes the funds under the Initial Loan, while asserting that mitigating factors prevented Defendant from making payments in accordance with the loan agreement.

*Response: Admitted.*

19.    On May 11, 2023, Defendant, by Mr. Good as its executive director, executed a Loan Agreement (the "Enterprise Loan Agreement") and Promissory Note (the "Enterprise Note") in favor of Plaintiff in the principal amount of $60,000.

*Response: Admitted.*

20.    The Enterprise Note bore interest at a non-default rate of 5.5% per annum.

*Response: Admitted.*

21.    The Parties executed five loan modification agreements for the Enterprise Loan.

*Response: Admitted.*

22.    Under the Enterprise Note, the Parties agreed that upon default the entire unpaid balance and interest under the Enterprise Note becomes immediately due and payable.

*Response: Admitted.*

23.    While such event of default is continuing, the Enterprise Note bears interest at the lesser of (i) the Interest Rate plus 5% or (ii) the maximum rate allowable by law.

*Response: Admitted.*

24.    The Enterprise Note provides that if the Enterprise Note is placed in the hands of attorneys for collection..., Defendant must pay all reasonable costs..., including all reasonable attorneys' fees.

*Response: Admitted that the Note so provides. Disputed as to reasonableness and amount of any fees claimed. See Response to ¶ 34, below.*

25.    Under the Fifth Loan Modification Agreement for the Enterprise Loan, the maturity date of the Enterprise Loan was extended to July 28, 2025.

*Response: Admitted.*

26.    On October 2, 2025, Plaintiff sent a Notice of Default to Defendant informing Defendant that all sums advanced under the Enterprise Loan were immediately due and payable and that the outstanding principal balance including accrued interest was $61,072.59.

*Response: Admitted.*

27.    Defendant has not paid Plaintiff the outstanding balance of the Enterprise Loan.

*Response: Admitted.*

28.    Mr. Good testified that Defendant understands it owes the funds under the Enterprise Loan.

*Response: Admitted.*

29.    Plaintiff disbursed a total of $675,000 under the Initial Loan in four advances.

*Response: Admitted.*

30.    Plaintiff disbursed $60,000 under the Enterprise Loan.

*Response: Admitted.*

31.    As of October 2, 2025, the date of the notices of default, the outstanding balance owed to Plaintiff under the Loans, including accrued interest, was not less than $631,854.89.

*Response: Disputed. This figure is supported only by Plaintiff's Notices of Default and a single conclusory paragraph of the Declaration of Ms. Evert (Ex. 8 ¶ 6), which states the ultimate balance without any underlying payment history, amortization schedule, accounting record, or interest calculation establishing how the figure was derived. The Notice of Default is itself merely a demand stating the amount Plaintiff claims is owed, not competent evidence of its accuracy. The Court may disregard this factual assertion on this basis. See Summary Judgment Procedures Order ¶ 5(a).*

32.    Default interest has continued to accrue on the Loans since October 2, 2025, pursuant to the terms of the respective Notes.

*Response: Disputed to the extent this paragraph presupposes a valid, continuing, unexcused default, and is supported only by a conclusory paragraph of the Evert Declaration (Ex. 8 ¶ 7) without any accompanying calculation, methodology, or accrual schedule. The Court may disregard this factual assertion on this basis. See Summary Judgment Procedures Order ¶ 5(a).*

33.    Plaintiff placed the Loans in the hands of counsel for collection and commenced this action to recover the unpaid indebtedness.

*Response: Admitted that Plaintiff commenced this action. NEHI lacks sufficient information to admit or deny the precise date the Loans were referred to counsel and, on that basis, disputes this fact to that limited extent. Ex. 8 (Evert Decl.) ¶ 8.*

**34.**     As of May 31, 2026, Plaintiff has incurred attorneys' fees in the amount of $55,449.63 in connection with such collection efforts.

> ***Response:*** *Disputed. This figure is supported solely by a single conclusory paragraph of the Evert Declaration (Ex. 8 ¶ 8), with no supporting invoices, billing records, time entries, hourly rates, or other documentation from which the accuracy or reasonableness of the amount can be assessed. NEHI disputes both the amount and the reasonableness of any fees claimed. The Court may disregard this factual assertion on this basis. See Summary Judgment Procedures Order ¶ 5(a).*