NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND

Plaintiff,

v.

NORTH EAST HOUSING INITIATIVE, INC.,

Defendant.

Civil Action No. 1:26-CV-76

**SUPPLEMENTAL APPENDIX OF SUPPORTING EXHIBITS TO NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, National Housing Trust Community Development Fund ("Plaintiff"), files this Supplemental Appendix of Supporting Exhibits to Plaintiff's Motion for Summary Judgment.

| Exhibit No. [1] | Document | Description/Purpose |
|---|---|---|
| 9 | Deposition Transcript of Garrick Good, Rule 30(b)(6) designee filed contemporaneously with Plaintiff's Reply in Support of Its Motion for Summary Judgment | Testimony of Garrick Good, Executive Director and Corporate Designee of Defendant North East Housing Initiative, Inc. |
| 10 | Supplemental Declaration of Ms. Alice Hamilton Evert | Declaration authenticating the supporting damages, nonpayment and calculation of pre-default interest and default interest (including Supplemental Declaration Exhibits 1 and 2) |

[signature page follows]

[1] Plaintiff's Initial Appendix of Supporting Exhibits (ECF No. 26-2) contains exhibits 1-8.

August 21, 2026

Respectfully submitted,

*/s/ Joel W. Ruderman*
Joel W. Ruderman
Federal Bar No. 479385
Jennifer L. Kneeland
Federal Bar No. 490522
1765 Greensboro Station
Place, Suite 1000
McLean, Virginia, 22102
(703) 749-1080 (telephone)
E-Mail: jruderman@watttieder.com
E-Mail: jkneeland@watttieder.com

Counsel for Plaintiff, National Housing Trust
Community Development Fund

**CERTIFICATE OF SERVICE**

I HEREBY certify that on August 21, 2026, I caused the foregoing Supplemental Appendix of Supporting Exhibits to National Housing Trust Community Development Fund's Motion for Summary Judgment to be served via CM/ECF, on the following:

Danya C. Cooper, Esquire
Cooper Legal, LLC
1 Olympic Place, Suite 900
Towson, MD 21204
dayna@cooperlegalsolutions.com

/s/ Joel W. Ruderman
Joel W. Ruderman

# EXHIBIT 9

Planet Depos

# Transcript of Garrick Good, Corporate Designee

**Date:** June 19, 2026
**Case:** National Housing Trust, et al. -v- North East Housing Initiative, Inc.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** clientservices@planetdepos.com
**planetdepos.com**
**Michigan #8598 | Nevada #089F | New Mexico #566**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND, Plaintiff | |
| V | Case No: 1:26-CV-76 |
| NORTH EAST HOUSING INITIATIVE , INC., Defendant | |

Deposition of GARRICK GOOD

Friday, June 19, 2026

10:21 a.m.

Job No.: 635373

Pages: 1 - 172

Reported By: Michael Antonio Rodriquez

Deposition of GARRICK GOOD, held at:

McNamee Hosea (Greenbelt)
6404 Ivy Lane
Suite 820
Greenbelt, MD 20770
Telephone: 301-441-2420

Pursuant to notice, before Michael A. Rodriquez, Notary Public in and for the District of Columbia.

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF, NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND:

JOEL W. RUDERMAN, ESQUIRE
Watt, Tieder, Hoffar & Fitzgerald, LLP
1765 Greensboro Station Place
Suite 100
McLean, VA 22101
Telephone: 703-749-1000
E-mail: Jruderman@wattieder.com

ON BEHALF OF THE DEFENDANT, NORTH EAST HOUSING INITIATIVE, INC.:

DAYNA C. COOPER, ESQUIRE
Cooper Legal, LLC
1 Olympic Place, Suite 900
Towson, Maryland 21204
Telephone: 202-642-5470
E-mail: Dayna@cooperlegalsolutions.com

E X H I B I T S

| EXHIBIT | DESCRIPTION | PAGE |
| --- | --- | --- |
| Exhibit 1 | Deposition Notice | 9 |
| Exhibit 2 | Loan Agreement | 14 |
| Exhibit 3 | Document | 17 |
| Exhibit 4 | Enterprise Loan | 23 |
| Exhibit 5 | | 28 |
| Exhibit 6 | | 33 |
| Exhibit 7 | Document | 37 |
| Exhibit 8 | E-mail | 47 |
| Exhibit 9 | Document | 65 |
| Exhibit 10 | Document | 71 |
| Exhibit 11 | Document | 73 |
| Exhibit 12 | Document | 75 |
| Exhibit 13 | Document | 80 |
| Exhibit 14 | Document | 81 |
| Exhibit 15 | Document | 82 |
| Exhibit 16 | Document | 105 |
| Exhibit 17 | Document | 113 |

extend it for a longer period, as we were still trying to get the funds reimbursed.

Q. Was there ever an agreement reached to actually modify the loan agreement?

A. No. We received this default number -- I mean this default letter instead.

Q. So these were just oral discussions?

A. Yes.

Q. Have there been any further payments with regards to the initial loan agreement since the date of this letter?

A. No --

(Simultaneous conversation.)

A. I don't think -- no, no.

ATTORNEY COOPER: Yes, no, or you don't think so? Yes, no, or you don't recall; which one?

THE WITNESS: I don't recall.

ATTORNEY COOPER: Don't speculate.

THE WITNESS: Okay.

BY ATTORNEY RUDERMAN:

Q. I'm now going to show you what has

2025?
A. Yes.
Q. I want to direct you to look at the second paragraph of this document.
Is this document a modification of the Enterprise Loan Agreement -- I'm sorry.
Does this document reference the fifth loan Modification Agreement?
A. Yes.
Q. Okay.
And under the fifth loan Modification Agreement, was the date of maturity extended for the Enterprise Loan Agreement to July 28th, 2025?
A. Yes.
Q. And as of July 28th, 2025, was the balance of that loan still due to the lender?
A. Yes.
Q. Have any payments been made with respect to the Enterprise loan since October 2, 2025?
A. I don't recall.

Q. If there had been any payments, where would those payments have come from?
A. What do you mean?
Q. When they come out of NEHI's bank account?
A. Yes.
Q. And would you have documents that reflect that the payments had been made?
A. Yes.
Q. And have those documents been produced?
A. We've -- we have turned over and produced all the documents that we have. I just don't recall what the last payment was of the date.
Q. Okay.
If there are no documents in the documents that have been produced that reflect any payments after October 2nd, 2025, I would ask that those documents be produced?
ATTORNEY COOPER: Oh, sorry. Yes, of course.

ATTORNEY RUDERMAN: Okay.
And I'm going to assume that if those documents are produced, that there hasn't been any payment since that date?
ATTORNEY COOPER: We will -- we will make a note in the record that there are no responsive documents, if that's the case.
ATTORNEY RUDERMAN: So there are no documents reflecting any payments that -- that occurred after October 2nd, 2023?
ATTORNEY COOPER: If that is the case, we will represent that there are no responsive documents, because there wouldn't have been no payment.
ATTORNEY RUDERMAN: Okay.
So you'll let me know at a later time --
(Simultaneous conversation.)
ATTORNEY COOPER: Yes.
ATTORNEY RUDERMAN: -- whether or not those documents exist?
ATTORNEY COOPER: Yes.

rephrase that.

Does it say that "Borrower shall make all payments of principal and interest under the note as and when the same become due and payable without notice or demand"?

A. Yes, that is correct.

Q. You understand that to be the agreement -- as part of the agreement of the loan agreement?

A. Yes.

Q. Is there any provision in the initial loan agreement that says something to the nature of "the borrower shall repay when due provided that grant funds from City of Baltimore shall have been received"?

A. I haven't reviewed the documents looking for that specifically, so I want to say I don't know.

Q. Is it your understanding that any such provision exists in the agreement?

ATTORNEY COOPER: Objection.

Calls for a legal conclusion.

THE WITNESS: The discussion that followed was that the whole purpose of the loan was because we knew going in that the -- the City of Baltimore was slow in paying for the reimbursements. And so it was the understanding that we made the loan agreement to the mirror the grant agreement understanding that we would -- we would -- that the fund would be paid when we got paid.

BY ATTORNEY RUDERMAN:

Q. Okay.

I would ask you to take a moment, review the agreement and let me -- and disclose to me any provisions that you believe exist in this loan agreement that suggests that the borrower, NEHI, shall repay the loan when due provided that the City of Baltimore or the AHT Funds have been received from NEHI?

ATTORNEY COOPER: So, I am going to object. Again, calls for legal conclusion. To the extent you want him to the read all -- however many pages it is to look for that

specific language, we probably need to go off the record.

ATTORNEY RUDERMAN: We can take a break.

ATTORNEY COOPER: Okay.

Could you -- so we'll go off the record. Could you write that specific language so that we can look for the specific language that you request -- that are you asking about.

ATTORNEY RUDERMAN: I don't -- are we still on the record?

THE COURT REPORTER: Still on the record.

ATTORNEY RUDERMAN: I don't believe that language exists, but I want him to show us where in the document he believes that it is referenced that the payments of the loan is conditional on receipt of the funds from the City of Baltimore, otherwise known as the AHT Funds.

ATTORNEY COOPER: Okay.

Do you understand that.

THE WITNESS: I understand the question. I don't think I have the capabilities to review the agreement for the language to point it out, however, I think that the -- the tenor of the modifications aligned with the understanding that we will be paying when we receive the money, which is why the modifications were made. And so, that's the essence of my understanding.

ATTORNEY RUDERMAN: Okay. Notwithstanding, this is a 13-page -- 14-page document.

ATTORNEY COOPER: Uhm-hmm.

ATTORNEY RUDERMAN: I ask that we go off the record, that you review the document, and I will come back and ask you the same question and you will -- ask you to answer it after you've reviewed the document.

ATTORNEY COOPER: Okay.

So I'm going to object because it's my opinion that he has actually answered the

question, but, even if I object, he still has to answer. So, that -- that's fine.

We can go off the record.

ATTORNEY RUDERMAN: Off the record.

Thank you.

ATTORNEY COOPER: Uhm-hmm.

(THEREUPON, the proceedings recessed at 11:14 a.m.)

(THEREUPON, the proceedings resumed at 11:37 a.m.)

BY ATTORNEY RUDERMAN:

Q. I am going to redirect you back to Deposition Exhibit No. 2. And we were talking about on Page 5, Paragraph 3.1.

A. (Complied.)

Okay.

Q. Okay.

And you had previously said on the record, and I'll repeat it, that this document at 3.1 says, "Borrower shall make all payments in principal and interest under the note as in when the same became due and payable without

notice or demand."
A. Yes.
Q. Okay.
And that is part of the initial loan agreement, correct?
A. Yes.
Q. Which you executed?
A. Yes.
Q. Okay.
Are there any provisions in this initial loan agreement, just stay with that Exhibit No. 2 --
(Simultaneous conversation.)
A. Uhm-hmm.
Q. -- that says that repayment is contingent upon AHTF funds, or otherwise known as funds from the City, have been received?
ATTORNEY COOPER: Objection.
Calls for legal conclusion.
You can answer.
THE WITNESS: It says on Page 2, "Whereas borrower has obtained grant funding

for the project from the City of Baltimore Affordable Housing Trust Fund and such grant funds will be disbursed to borrower for acquisition and renovation costs for the project on a reimbursement basis.

"Whereas the amounts disbursed under a loan agreement shall be used by the borrower to acquire and renovate the property in brief financing from the AFTH (sic) grant in the event that reimbursements from the AHTF grant are delayed."

BY ATTORNEY RUDERMAN:

Q. Those two provisions that you read to me do not state that repayment is contingent on receiving those funds; is that correct?

ATTORNEY COOPER: Objection. Asked and answered.

You have to give me an opportunity to object --

(Simultaneous conversation.)

THE WITNESS: Okay, okay.

ATTORNEY COOPER: -- so take some time.

Objection.

Asked and answered.

Objection.

Calls for legal conclusion.

Objection.

The document speaks for itself.

Go ahead.

You can answer.

THE WITNESS: I provided my answer.

BY ATTORNEY RUDERMAN:

Q. And what is that answer?

A. That my -- it's my interpretation is -- it says, "Whereas borrower has obtained grant funding from the project from the City of Baltimore Affordable Housing Trust Fund, the AHTF grant, and such grant funds will be disbursed to the borrower for acquisition and renovation costs for the project on a reimbursement basis.

"Whereas the amounts disbursed under

the loan shall be used by borrower to acquire and renovate the property and bridge financing from the AHTF grant in that reimbursements from that grant are delayed."

Q. Are there any other provisions within the loan agreement that you believe suggest or support an argument that repayment is contingent upon receipt of the AHT funds?

ATTORNEY COOPER: Objection.
Calls for legal conclusion.
You can answer.

THE WITNESS: Not that I see at this time.

BY ATTORNEY RUDERMAN:

Q. You spent time reviewing the document?

A. I have reviewed it, and I have alerted to what recitals that I found on Page 2 that I thought were answering the questions you asked.

Q. Okay.

A. And I stick with that as my answer.

Q. And what is that answer?

ATTORNEY COOPER: Could you read it back for the record, please?

(WHEREUPON, the court reporter read back.)

THE COURT REPORTER: This one?

ATTORNEY COOPER: Yes.

(WHEREUPON, the court reporter read back.)

(Simultaneous conversation.)

ATTORNEY COOPER: And he said that -- that he read the agreement and that it says --

(Simultaneous conversation.)

ATTORNEY RUDERMAN: -- under the recitals.

ATTORNEY COOPER: Right. And he said that that was his interpretation.

ATTORNEY RUDERMAN: Okay.

And then I asked if there are any other provisions. And then he said, I don't know exactly what he said, but he said

something to the extent of based on what I recall or what I saw.

THE WITNESS: No. I said what I reviewed, I have stated that under the recitals.

ATTORNEY RUDERMAN: Okay.

Let's go back on the record.

Are we back on the record?

We have been on the record.

BY ATTORNEY RUDERMAN:

Q. Okay.

Let me just --

(Simultaneous conversation.)

ATTORNEY COOPER: Or maybe you should reask or ask it differently.

BY ATTORNEY RUDERMAN:

Q. Let me just -- we are going to start from the beginning.

In preparation for this deposition, you've reviewed the loan agreement; is that correct?

A. That is correct.

Q. Okay.
And during the course of this deposition, we just took approximately 15-, 30-minute break for you to review the loan agreement; is that correct?
A. That is correct.
Q. Okay.
And based on your review of the document, other than the two whereas clauses that you read into the record from Page 2 of the loan agreement, are there any other provisions in which payment of the loan is contingent upon receipt of the grant funds?
ATTORNEY COOPER: Okay.
So I'm going to object for calls for a legal conclusion, asked and answered, and I'm also going to object to vague. Because you said are there any other -- you said are there any other provisions.
His very first answer was a response about his interpretation of the document as a whole, and then you later asked about

specifics.

So I feel like he has answered the question about other provisions.

ATTORNEY RUDERMAN: Okay.

ATTORNEY COOPER: Go ahead.

ATTORNEY RUDERMAN: I'm going to ask you not to make any more speaking objections, just because I think it's muddling up the record, and I want to get this clear because this is important.

ATTORNEY COOPER: Okay.

Maybe we should go off the record then to get clarity. Because my position is he has asked -- he answered the question.

ATTORNEY RUDERMAN: Okay.

I understand that, but I don't think he has answered. And I just want to make sure we have it clear on the record, okay.

THE WITNESS: I have my answer.

BY ATTORNEY RUDERMAN:

Q. Can you provide your answer to me? Let me ask the question again.

A. Go for it.
Q. Please identify any provisions in the loan agreement other than the two whereas clause paragraphs you read into the record previously that you believe indicate repayment of the loan was contingent upon receipt of the AHTF grant funds.
ATTORNEY COOPER: I am just going to reiterate those objections.
THE WITNESS: And I'm going to answer the same and say that those recitals were my answer previously mentioned that you referenced. That is my answer.
BY ATTORNEY RUDERMAN:
Q. And no other provisions?
ATTORNEY COOPER: Objection. Mischaracterizes his testimony.
BY ATTORNEY RUDERMAN:
Q. You can answer.
A. Okay.
The recitals are what -- are my answer.

Q. And no other provision?
A. I don't see any at this time.
Q. Okay.
Thank you.
During the break, you were shown the loan modifications, okay? I'm going to ask you a general overall question.
A. Uhm-hmm.
Q. And let me rephrase that. Let's -- let's go through each one. Okay. I'm going to ask you to identify what has been marked as Deposition Exhibit No. 9.
A. Okay.
(THEREUPON, Exhibit 9 was marked by the court reporter.)
THE WITNESS: You asked me to do what now?
BY ATTORNEY RUDERMAN:
Q. Do you recognize this document?
A. Yes, I do.
Q. What is this document?
A. Loan Modification Agreement that's

Q. Okay.
And this is the second loan modification; is that correct?
A. Yes.
Q. And that was executed by you?
A. Yes.
Q. Okay.
Are there any provisions in this document that reflect that repayment of the initial loan was contingent upon receipt of the AHTF grant funds?
A. I will direct you to Page 1. It says, "Whereas funding under the Affordable Housing Trust Fund grant is expected to resume in June 2023" as being the purpose for the modification.
Q. Okay.
Are there any other provisions in that document that indicate that repayment of the loan is contingent upon receipt of the AHTF grant fund?
A. Not that I see upon this review.

Q. Was this document signed by you?
A. It was.
Q. Do you believe this document to be a true and accurate copy of the third loan Modification Agreement?
A. I do.
Q. And you have had an opportunity to review this document?
A. I have.
Q. Can -- are there any provisions within this loan -- third loan Modification Agreement that indicate that repayment of the initial loan is contingent upon receipt of the AHTF grant fund?
A. Id make reference to Page 1 where it says, "Whereas payments to the borrower by the City of Baltimore, Maryland, under the Affordable Housing Trust Fund grant, the AHTF grant, awarded to borrower have been delayed and will not be received by borrower in time to be used to repay the loan by the maturity date."

That was the purpose of the modification.

Q. Are there any other provisions in this agreement that you believe indicate that repayment of the loan is conditional upon receipt of the AHTF grant funds?

A. Not that I see upon this review.

Q. I'm going to now direct attention to what has been marked as Deposition Exhibit No. 11.

(THEREUPON, Exhibit 11 was marked by the court reporter.)

BY ATTORNEY RUDERMAN:

Q. Do you recognize this document?

A. I do.

Q. What is this document?

A. This is the fourth loan agreement modification that was executed November 6, 2023.

Q. It was executed by you?

A. Yes, it was.

Q. Okay. Does -- is this document a

the court reporter.)

A. Okay.

BY ATTORNEY RUDERMAN:

Q. Do you recognize what has been marked as Deposition Exhibit No. 12?

A. Yes.

Q. What is that document?

A. It's the fifth loan Modification Agreement dated January 5th, 2024.

Q. Okay.

Did you sign that document?

A. I did.

Q. Okay.

Do you understand this document to be a true and accurate copy of the fifth loan modification?

A. As far as I can tell, yes.

Q. Can you identify in this document any provisions that you believe indicate that repayment of the initial loan is contingent upon receipt of the AHTF grant funds?

A. I would direct you to Page 2, No. 2.

It says, "The maturity date of the loan is hereby extended to the earlier of, (1), borrower's receipt of the Affordable Housing Trust Fund grant funds for July 5th, 2024."

Q. Are there any other provisions in this document that you believe reflect that repayment of the initial loan is contingent upon receipt of the AHTF grant funds?

A. Not that I see in this review.

Q. That -- I am now directing you to Paragraph 2 of that document.

You just read that paragraph, correct?

A. That is correct.

ATTORNEY COOPER: Hold on. Wait. You said Paragraph 2. So the first "whereas" clause or --

(Simultaneous conversation.)

ATTORNEY RUDERMAN: No. Paragraph 2 on Page 2.

ATTORNEY COOPER: Oh, okay. Uhm-hmm.

BY ATTORNEY RUDERMAN:
Q. I'm directing you to Paragraph 2.
A. (Complied.)
Q. If grant funds were not received by July 5, 2024, what did you understand to occur on that date?
ATTORNEY COOPER: Objection. Calls for speculation.
Go ahead.
THE WITNESS: What -- the question is what did I expect to occur?
BY ATTORNEY RUDERMAN:
Q. What did you understand occurred on July 5th, 2024, if the grant funds were not issued?
ATTORNEY COOPER: I withdraw my objection.
Go ahead.
THE WITNESS: We would do an additional amendment, as we did with 13.
BY ATTORNEY RUDERMAN:
Q. Is that what the document says?

A. It does not say that, but --
(Simultaneous conversation.)
ATTORNEY COOPER: Objection.
Asked and answered.
THE WITNESS: -- it was -- was what
I would expect.
BY ATTORNEY RUDERMAN:
Q. Does the document provide that if
July 5th occurs, and the grant funds are not
received, there would be a further
modification of the loan agreement?
ATTORNEY COOPER: Objection. The
document speaks for itself.
Go ahead.
THE WITNESS: There -- the dialogue
that I had been having with Ben Zimmitti also
said that there will -- there will be an
extension if we did not meet that date.
BY ATTORNEY RUDERMAN:
Q. Are there any statements in this
document (indicating)?
A. Not that I see at this time.

Q. And you've reviewed this document, correct?
A. I have reviewed it, yes.
Q. Okay.
I'm going to now direct your attention to what has been -- what has been marked as Deposition Exhibit No. 13.
(THEREUPON, Exhibit 13 was marked by the court reporter.)
A. Okay.
BY ATTORNEY RUDERMAN:
Q. Do you recognize this document?
A. Yes, I do.
Q. What is this document?
A. This is the sixth loan Modification Agreement dated June -- July 5th, 2024.
Q. Did you sign this document?
A. I did.
Q. Do you understand this document to be a true and accurate copy of the sixth loan Modification Agreement?
A. Yes.

Q. I would now ask you to inform me of any provisions within this loan Modification Agreement that indicate that repayment of the loan is contingent upon receipt of the AHTF grant funds.

A. I don't see any.

Q. I now direct your attention to Deposition Exhibit 14.

(THEREUPON, Exhibit 14 was marked by the court reporter.)

THE WITNESS: Okay.

BY ATTORNEY RUDERMAN:

Q. What do you -- do you recognize this documents?

A. I do.

Q. What is this document?

A. It's the seventh loan Modification Agreement dated January 5th, 2025.

Q. And did you sign this agreement?

A. Yes, I did.

Q. Okay.

And do you believe this to be a true

should not be any speaking objection, and that was clearly a speaking objection.

So I would ask that you refrain from speaking objection at this point.

ATTORNEY COOPER: Okay.

That's -- objection.

Legal conclusion.

BY ATTORNEY RUDERMAN:

Q. You can answer the question.

A. It's my belief excuse would -- is not to dispute that we owe the funds. It's just that there were mitigating factors that prevented us from being able to make the payments in accordance with the outlined agreement.

Q. So do you understand as of today that you owe the funds?

A. Yes.

Q. And that is the funds under the initial loan agreement, correct?

A. Yes.

Q. And also under the Enterprise loan--

(Simultaneous conversation.)
A. Enterprise loan. Yes.
THE COURT REPORTER: Excuse me. You are mixing me up with crosstalk.
BY ATTORNEY RUDERMAN:
Q. If you can just wait until I finish my questions.
A. Okay.
Q. And you understand that NEHI owes the funds under the Enterprise Loan Agreement?
A. That is correct.
Q. When do you expect to repay the loan?
ATTORNEY COOPER: Objection. Speculation. Calls for speculation.
THE WITNESS: As soon as the funds become available.
BY ATTORNEY RUDERMAN:
Q. From what source?
A. As I stated earlier, the City suspended our reimbursements and all activity

correct?
A. Yes.
Q. Okay.
What is the action that you believe the plaintiff should have taken that they delayed?
ATTORNEY COOPER: Objection.
Calls for legal conclusion.
THE WITNESS: The plaintiff, or representatives for the plaintiff, along with myself, had extensive meetings with the City, and to explain what the situation was, and to get assurance that the payments were being made.
So it was with those meetings, or the results of those meetings, that the determination was made that the City would continue to extend or not exercise its right to declare a default.
It was not understanding -- as to when the default letter was issued, we had had a subsequent conversation. Ben Zimmitti had

left, and the new person had started, and she was looking to further work out a resolution, and when I was waiting on a response from that is when I received the default letter.

BY ATTORNEY RUDERMAN:

Q. But it's safe to say that up till that point, plaintiff had granted extensions on the loan agreement, correct?

A. Based upon their communications with the City, as well as with our office, yes.

Q. And those extensions were requested by NEHI, correct?

A. No, they were not requested. They were actually determined by NHT, that they would put them in place, based on their conversations with the City.

Q. Oh NEHI never requested an extension to the loan agreements?

A. No. We never put anything to go make a request. They actually did that as saying they had something -- I was told that because the agreement's extended, we had to do

an extension, and those modifications were all initiated by NHT.

Q. But you executed the loan modification agreements, correct?

A. Yes.

Q. Extending the maturity date?

A. Yes.

Q. I'm going to direct your attention to Exhibit No. 10.

A. (Complied.)

Okay.

Q. I'm going to direct your attention to the bottom of the page, the last paragraph that starts off with "Whereas."

A. On Page 1?

ATTORNEY COOPER: On Page 1?

BY ATTORNEY RUDERMAN:

Q. On Page 1.

A. (Complied.)

Q. Can you read that out loud for the record?

A. "Whereas borrower has requested

modification of the loan to extend its maturity date by 60 days to allow additional time for borrower's receipt of AHTF grant funds, and subject to the terms and conditions set forth, lender has agreed to the requested modification as detailed herein."

Q. And you -- again, you signed this Modification Agreement, correct?

A. I did.

Q. I'm going to direct you again to Deposition Exhibit No. 17. It's the answer.

A. Oh, okay.

(Complied.)

Q. And I'm going to direct you to Page 3 again.

A. (Complied.)

Q. And do you see where you say, "Affirmative Defenses: Failure to mitigate damages"?

A. Uhm-hmm.

Q. Can you explain that factual basis for this affirmative defense?

ATTORNEY COOPER: Again, I'm going to object. Calls for a legal conclusion. To the extent it calls for a legal conclusion.

Go ahead.

THE WITNESS: We -- we believe that in addition to -- that we have been subject to a number of damages as a result of the City's actions of not repaying the loan that caused the -- the cascade of events that have occurred.

We do have -- so we believe that some of the things that are asserted here are things that we don't necessarily agree with.

We agree that we owe -- that we have a loan with NHT -- two loans, and that they are to be repaid; however there were factors beyond our control as to why we could not.

Those two being factors primarily being driven by the asset forfeiture inquiry and the cascade of events that followed that, unbeknownst to us, as it was in operation.

And then, two, the City's unilateral

decision to pause not only the grants tied to this agreement, but all of our grants that we had citywide.

We have a portfolio of grants that were -- that were huge. I mean, it was a lot. It was over $3 million worth of contracts, and to have those all stop with no explanation, then, you know, it just caused a number of issues that -- that we have as defenses as -- that would be under our control.

Because up until February 2nd, it hadn't even been communicated to us what anyone was doing or any opportunity to provide explanation or to be able to seek any kind of -- negotiate any remedies for us to be able to do anything we were supposed to do.

BY ATTORNEY RUDERMAN:

Q. Is it your position that the plaintiff failed to mitigate be damages?

A. No.

ATTORNEY COOPER: Objection -- Objection.

Q. Okay.

I'll like to direct you to Page 3, at the bottom, where it says, "Affirmative Defenses," Line 5, "unclean hands?"

Do you see that?

A. I do.

Q. Can you describe the factual basis for your affirmative defense of unclean hands?

ATTORNEY COOPER: Objection.

Calls for a legal conclusion.

Go ahead.

THE WITNESS: I want to decline to answer because I don't know how to explain that, unclean hands.

BY ATTORNEY RUDERMAN:

Q. What do you understand unclean hands to be?

A. That this decision or -- or our default did not come from any action of ours, just the mitigating factors that I explained; otherwise of being prevented to be able to make the payments.

Q. Are you suggesting in any manner that plaintiff's hands were uncleaned?

ATTORNEY COOPER: Objection. Calls for legal conclusion.

A. No.

BY ATTORNEY RUDERMAN:

Q. Are you currently making any attempt to raise funds for NEHI?

A. We have --

(Simultaneous conversation.)

ATTORNEY COOPER: Objection. Broad. Vague. Go ahead.

THE WITNESS: We, as I reported earlier, made several attempts to look at a consolidation loan for legacy debt that included NHT and other lenders. Those have been about five attempts in which we were able to -- I mean that they all ended up being consequently denied.

We have made a couple of requests

CERTIFICATE OF REPORTER

I, Michael A. Rodriquez, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by the Notary Public; that the testimony of said witness was taken down by me in stenotype and thereafter reduced to typewriting under my supervision; that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and further, that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.



MICHAEL A. RODRIQUEZ, RPR/CP/RMR
FREELANCE VERBATIM REPORTER

# EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND<br><br>Plaintiff,<br><br>v.<br><br>NORTH EAST HOUSING INITIATIVE, INC.,<br><br>Defendant. | Civil Action No. 1:26-CV-76 |

**SUPPLEMENTAL DECLARATION OF ALICE HAMILTON EVERT IN SUPPORT OF PLAINTIFF NATIONAL HOUSING TRUST COMMUNITY DEVELOPMENT FUND'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

I, Alice Hamilton Evert, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following factual statements are true and correct to the best of my knowledge:

1. I am over the age of 18 and, if called to testify, I am competent to testify as to the matters set forth herein.

2. I am employed by the National Housing Trust Community Development Fund (the "National Housing Trust") as legal counsel. I have worked at the National Housing Trust since February 24, 2022. The National Housing Trust is a District of Columbia nonprofit corporation. The National Housing Trust's mission is to promote the long-term preservation of quality housing for low- and moderate-income individuals.

3. I am familiar with the facts and circumstances surrounding the above-captioned matter. I have personal knowledge of the loan transactions between the National Housing Trust and Defendant North East Housing Initiative, Inc. ("Defendant"), including the origination, modification, and administration of the loans described herein. I make this declaration based upon

my personal knowledge where applicable, my role as the National Housing Trust's legal counsel, my review of the National Housing Trust's business records maintained in the ordinary course of business, and information reasonably available to the National Housing Trust.

4. I submit this Supplemental Declaration to supplement my prior Declaration dated June 25, 2026 (ECF No. 26-2) (the "Prior Declaration"), and to respond to Defendant's contention, raised in its Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 38) (the "Opposition"), that the National Housing Trust has not supported the amount of its damages with competent evidence. This Supplemental Declaration sets forth an itemized calculation of the amounts owed under the Loans and identifies the specific business records from which those amounts are derived.

5. As stated in my Prior Declaration, on January 12, 2026, the National Housing Trust initiated this matter by filing a Complaint against Defendant seeking money damages for losses incurred in connection with two loan agreements and related promissory notes (the "Loans") that it issued at the request of Defendant to support Defendant's efforts to acquire, rehabilitate, and sell single-family homes in northeast Baltimore, Maryland. Defendant breached the Loans by failing to make payments owed under the Loans when due, and without regard to the National Housing Trust's demand for payment.

## Basis of Knowledge and Business Records

6. In my capacity as legal counsel for the National Housing Trust, I am the custodian of, or have access to, the business records of the National Housing Trust relating to the Loans described herein. The loan documents attached as exhibits to the Complaint filed on January 12, 2026 (ECF No. 1), and the loan history reports and statements described below and attached to this Supplemental Declaration, are true and correct copies of records that were made at or near the

time of the events they record, by or from information transmitted by a person with knowledge, and that are kept and maintained in the course of the National Housing Trust's regularly conducted business activity; it is the regular practice of the National Housing Trust to make and keep such records. I am personally familiar with each of these records.

7. The loan history reports and loan statements referenced in this Supplemental Declaration are generated from the National Housing Trust's loan servicing and accounting system, which records each advance (drawdown), each payment received, the application of each payment to principal, interest, fees, and other charges, and the resulting loan balance, in the ordinary course of the National Housing Trust's business. I have reviewed these records and the amounts set forth below are derived from them.

## The Initial Loan

8. On or about March 7, 2022, Defendant, by Garrick R. Good, as its executive director, executed a loan agreement (the "Initial Loan") and note (the "Initial Note") in favor of the National Housing Trust in the principal amount of $675,000, with interest accruing at a non-default rate of 5.5% per annum. Exhibit A to the Complaint (ECF No. 1-1) is a true and correct copy of the Initial Loan Documents, including the Loan Agreement dated March 7, 2022, the Revolving Line of Credit Promissory Note, the Amended and Restated Revolving Line of Credit Promissory Note dated May 11, 2023, and the eight loan modification agreements executed by the Parties between September 1, 2022 and May of 2025.

9. The non-default interest rate on the Initial Loan was subsequently modified. Pursuant to the First Loan Modification Agreement dated September 1, 2022, the interest rate was reduced to 5.125% per annum, which rate was carried forward in the Amended and Restated Note. Pursuant to the Second Loan Modification Agreement dated May 11, 2023, the principal sum of

the Initial Loan was increased by $30,000, to a total of $705,000, reflecting the amount of unpaid interest through June 30, 2023. Pursuant to the Eighth Loan Modification Agreement, effective June 1, 2025, the Parties agreed to amend the Initial Note so that the principal amount of the loan would bear interest at the rate of 6% per annum.

10. The Initial Note originally matured on September 7, 2023, and that maturity date was subsequently extended by the Third through Eighth Loan Modification Agreements. Under the Amended and Restated Note, the Parties agreed that upon default the entire unpaid balance under the Initial Note becomes immediately due and payable, that while such event of default is continuing the Initial Note shall bear interest equal to the maximum statutory rate allowable by the District of Columbia, and that the National Housing Trust may recover all reasonable costs of collecting or attempting to collect the Initial Note, including all reasonable attorneys' fees and disbursements. The maximum statutory rate applicable to this default-interest calculation is 24% per annum under D.C. Code § 28-3301(a).

11. On October 2, 2025, the National Housing Trust sent a Notice of Default to Defendant regarding the Initial Loan, a true and correct copy of which is Exhibit B to the Complaint (ECF No. 1-2), informing Defendant that all sums advanced under the Initial Loan were immediately due and payable and that the outstanding principal balance of the Initial Loan, including accrued interest, as of the maturity date of August 15, 2025, was $570,782.30. Defendant has not paid the National Housing Trust the outstanding balance of the Initial Loan.

12. The Loan History Report for the Initial Loan (National Housing Trust loan no. 109-01-08), a true and correct copy of which is attached as **Supplemental Exhibit 1**, reflects each advance, payment, and the application of each payment, and shows an outstanding unpaid principal balance of $563,828.32. The difference of $6,953.98 between the outstanding principal balance

of $563,828.32 and the $570,782.30 stated in the Notice of Default represents accrued and unpaid non-default interest through the maturity date of August 15, 2025.

13. No payments have been made on the Initial Loan since the Notice of Default was issued on October 2, 2025. Accordingly, the outstanding balance of the Initial Loan remains $570,782.30, and, under the Amended and Restated Note, default interest has accrued on that outstanding balance from October 2, 2025 forward at the applicable default rate.

14. The amount of default interest accrued on the Initial Loan from October 2, 2025 through August 20, 2026 is calculated as follows: the outstanding balance of $570,782.30, multiplied by the applicable default interest rate of 24% per annum under D.C. Code § 28-3301(a), equals $136,987.752 in annual interest, which yields a per diem accrual of $380.52 when calculated on a 360-day year. Multiplied by the 322 days in the period from October 2, 2025 through August 20, 2026, this yields total accrued default interest of $122,527.44. Interest is calculated on the outstanding principal balance and is not compounded.

## The Enterprise Loan

15. On May 11, 2023, Defendant, through Mr. Good, executed a second loan agreement (the "Enterprise Loan") and note (the "Enterprise Note") in favor of the National Housing Trust in the principal amount of $60,000, with interest accruing at a non-default rate of 5.5% per annum. Exhibit C to the Complaint (ECF No. 1-3) is a true and correct copy of the Enterprise Loan Documents, including the Enterprise Loan Agreement dated May 11, 2023, the Promissory Note, and the five loan modification agreements executed by the Parties between September 30, 2023 and January 28, 2025.

16. Under the Enterprise Note, the Parties agreed that upon default the entire unpaid balance and interest under the Enterprise Note become immediately due and payable, and that

while such event of default is continuing the Enterprise Note shall bear interest equal to the lesser of (i) the Interest Rate plus 5% (5.0%) or (ii) the maximum rate allowable by law. Because the non-default Interest Rate on the Enterprise Loan is 5.5% per annum, the Interest Rate plus 5.0% equals 10.5% per annum, which is the lesser of the two figures and therefore the applicable default rate. Under the Fifth Loan Modification Agreement, the entire balance of the Enterprise Loan and accrued interest was due on July 28, 2025.

17. On October 2, 2025, the National Housing Trust sent a Notice of Default to Defendant regarding the Enterprise Loan, a true and correct copy of which is Exhibit D to the Complaint (ECF No. 1-4), informing Defendant that all sums advanced under the Enterprise Loan were immediately due and payable and that the outstanding balance of the Enterprise Loan, including accrued interest, was $61,072.59. Defendant has not paid the National Housing Trust the outstanding balance of the Enterprise Loan.

18. The Loan History Report for the Enterprise Loan (National Housing Trust loan no. 109-02-01), a true and correct copy of which is attached as **Supplemental Exhibit 2**, reflects each advance, payment, and the application of each payment, and shows an outstanding unpaid principal balance of $60,000.00. The difference of $1,072.59 between the outstanding principal balance of $60,000.00 and the $61,072.59 stated in the Notice of Default represents accrued and unpaid non-default interest through the maturity date of July 28, 2025 .

19. No payments have been made on the Enterprise Loan since the Notice of Default was issued on October 2, 2025. Accordingly, the outstanding balance of the Enterprise Loan remains $61,072.59, and, under the Enterprise Note, default interest has accrued on that outstanding balance from October 2, 2025 forward at the applicable default rate of 10.5% per annum.

20. The amount of default interest accrued on the Enterprise Loan from October 2, 2025 through August 20, 2026 is calculated as follows: the outstanding balance of $61,072.59, multiplied by the default interest rate of 10.5% per annum, equals $6,412.62 in annual interest, which yields a per diem accrual of $17.81 (calculated on a 360-day year). Multiplied by the 322 days in the period from October 2, 2025 through August 20, 2026, this yields total accrued default interest of $5,734.82. Interest is calculated on the outstanding balance and is not compounded.

**Late Fees and Other Charges**

21. I have reviewed the Loan History Reports for both Loans. The reports reflect that no separate late fees or comparable charges have been assessed against or added to the balance of either the Initial Loan or the Enterprise Loan; the "Late Fee" fields in the reports reflect $0.00. Accordingly, the National Housing Trust does not include any separately assessed late-fee amount in the damages calculation set forth herein.

**Summary of Amounts Owed**

22. Based upon my review of the business records described above, the amounts owed by Defendant to the National Housing Trust, as of August 20, 2026, are summarized as follows:

| Component | Initial Loan | Enterprise Loan |
|---|---|---|
| Outstanding principal balance | $563,828.32 | $60,000.00 |
| Accrued and unpaid interest as of Oct. 2, 2025 (Notice of Default) | $6,953.98 | $1,072.59 |
| Outstanding balance stated in Notice of Default (Oct. 2, 2025) | $570,782.30 | $61,072.59 |
| Default interest, Oct. 2, 2025 – Aug. 20, 2026 (322 days) | $122,527.44, calculated at 24% per annum under D.C. Code § 28-3301(a) on the outstanding unpaid balance | $5,734.82, calculated at 10.5% per annum on the outstanding unpaid balance |

| | | |
|---|---|---|
| | including principal and interest | including principal and interest |
| Late fees / other charges | $0.00 | $0.00 |

23. The combined outstanding balance stated in the Notices of Default as of October 2, 2025 was not less than $631,854.89 ($570,782.30 under the Initial Loan and $61,072.59 under the Enterprise Loan). That amount does not include default interest accruing after October 2, 2025, or other recoverable amounts.

**Response to Defendant's Damages Arguments**

24. I understand that Defendant contends the National Housing Trust's claimed principal-and-interest balance of not less than $631,854.89 rest entirely on conclusory paragraphs of my Prior Declaration and are unsupported by any amortization schedule, payment history, accrual calculation, or underlying accounting record. That contention is addressed by this Supplemental Declaration and the records attached to it. The outstanding principal balances of $563,828.32 (Initial Loan) and $60,000.00 (Enterprise Loan) are taken directly from the National Housing Trust's Loan History Reports, which record each advance and each payment and its application, and which are attached as Supplemental Exhibits 1 and 2.

25. I further understand that Defendant contends the National Housing Trust has not identified how its default-rate interest is calculated, on what principal base, or for what period, and that it has not reconciled the interest figure to any underlying record. As set forth in Paragraphs 14 and 20 above, the default interest is calculated on the outstanding unpaid balance of each Loan (not on a compounded basis), at the default rate specified in the governing Note — 24% per annum under D.C. Code § 28-3301(a) for the Initial Loan, and 10.5% per annum (the Interest Rate of

5.5% plus 5.0%) for the Enterprise Loan — for the 322-day period from the October 2, 2025 Notices of Default through August 20, 2026.

27. The factual statements in this Supplemental Declaration are made on my personal knowledge, are based on my review of the National Housing Trust's business records maintained in the ordinary course of business, and set out facts admissible in evidence, and I am competent to testify to the matters stated herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 20, 2026 in Durham, North Carolina.

______________________________

Alice Hamilton Evert

# SUPPLEMENTAL DECLARATION EXHIBIT 1

# Loan History - Drawdowns and Balances
**Sorted by Effective Date**

## 109-01-08 North East Housing Initiative, Inc.

Multi-Sourced from 2 sub-loans: SUB 1 is #109-01-09, SUB 2 is #109-01-10

**Board Date:** 4/19/2021 **Approved Loan Amount:** $705,000.00
**Settled:** 9/1/2022 **Actual Loan Amount:** $703,828.32
**Type:** Bridge/Short-Term ***Balance at runtime:*** *$563,828.32*

**Phases:**
1. Due 10/1/2022 for 6 Quarters, Interest Only (Traditional Mtg Quarterly)
2. Due 2/1/2024 for 3 Months, Interest Only (Traditional Mtg Monthly)
3. Due 7/1/2024, Interest Only (Traditional Mtg Quarterly)
4. Due 10/1/2024 for 2 Quarters, Interest Only (Traditional Mtg Quarterly)
5. Due 4/1/2025, Interest Only (Traditional Mtg Quarterly)
6. Due 5/15/2025, Interest Only (Traditional Mtg Monthly)
7. Due 6/1/2025 for 3 Months, Interest Only (Traditional Mtg Monthly) at 6.%
8. Due 8/15/2025, Interest Only (Traditional Mtg Monthly), balloon approx. $565,144 at 6.%

**Loan Contact:** NEHI Invoicing
North East Housing Initiative, Inc.
P.O. Box 11762
P.O. Box 11762
Baltimore, MD 21206

Loan is Currently Open

## RECEIPTS AND DRAWDOWNS

| | Effective Date | Check # | Due Date | Principal | Resulting Loan Balance | Interest | Escrow | Fees | Late Fee | Unapplied | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Draw | 9/1/2022 | Loan Modification | | ($675,000.00) | $675,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($675,000.00) |
| | 6/26/2023 | Wire_6.26.23 | 10/1/2022 | $0.00 | $675,000.00 | $1,546.80 | $0.00 | $0.00 | $0.00 | $0.00 | $1,546.80 |
| | 6/26/2023 | Wire_6.26.23 | 1/1/2023 | $0.00 | $675,000.00 | $4,640.63 | $0.00 | $0.00 | $0.00 | $0.00 | $4,640.63 |
| | 6/26/2023 | Wire_6.26.23 | 4/1/2023 | $0.00 | $675,000.00 | $4,640.63 | $0.00 | $0.00 | $0.00 | $0.00 | $4,640.63 |
| | 6/26/2023 | Wire_6.26.23 | 7/1/2023 | $0.00 | $675,000.00 | $4,640.63 | $0.00 | $0.00 | $0.00 | $0.00 | $4,640.63 |
| | 6/26/2023 | Wire2_6.26.23 | 10/1/2022 | $0.00 | $675,000.00 | $1,335.90 | $0.00 | $0.00 | $0.00 | $0.00 | $1,335.90 |
| | 6/26/2023 | Wire2_6.26.23 | 1/1/2023 | $0.00 | $675,000.00 | $4,007.81 | $0.00 | $0.00 | $0.00 | $0.00 | $4,007.81 |
| | 6/26/2023 | Wire2_6.26.23 | 4/1/2023 | $0.00 | $675,000.00 | $4,007.81 | $0.00 | $0.00 | $0.00 | $0.00 | $4,007.81 |
| | 6/26/2023 | Wire2_6.26.23 | 7/1/2023 | $0.00 | $675,000.00 | $4,008.11 | $0.00 | $0.00 | $0.00 | $0.00 | $4,008.11 |
| | 6/27/2023 | | 7/1/2023 | $0.00 | $675,000.00 | $0.00 | $0.00 | $703.14 | $0.00 | $0.00 | $703.14 |
| | 7/1/2023 | | | ($28,828.32) | $703,828.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($28,828.32) |
| | 9/19/2023 | ACH_9.19.23 | 10/1/2023 | $0.00 | $703,828.32 | $8,990.78 | $0.00 | $0.00 | $0.00 | $0.00 | $8,990.78 |
| | 9/19/2023 | ACH_9.19.23 | 7/1/2023 | $0.00 | $703,828.32 | $44.12 | $0.00 | $0.00 | $0.00 | $0.00 | $44.12 |
| | 12/13/2023 | ACH_12.13.23 | 10/1/2023 | $50,000.00 | $653,828.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $50,000.00 |

## Loan History - Drawdowns and Balances
**Sorted by Effective Date**

**109-01-08 North East Housing Initiative, Inc.**

### RECEIPTS AND DRAWDOWNS

| | Effective Date | Check # | Due Date | Principal | Resulting Loan Balance | Interest | Escrow | Fees | Late Fee | Unapplied | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1/22/2024 | ACH_1.22.24 | 1/1/2024 | $0.00 | $653,828.32 | $8,352.06 | $0.00 | $0.00 | $0.00 | $0.00 | $8,352.06 |
| | 4/17/2024 | ACH_4.16.24 | 2/1/2024 | $0.00 | $653,828.32 | $2,784.02 | $0.00 | $0.00 | $0.00 | $0.00 | $2,784.02 |
| | 4/17/2024 | ACH_4.16.24 | 3/1/2024 | $0.00 | $653,828.32 | $2,784.02 | $0.00 | $0.00 | $0.00 | $0.00 | $2,784.02 |
| | 4/17/2024 | ACH_4.16.24 | 4/1/2024 | $0.00 | $653,828.32 | $2,784.02 | $0.00 | $0.00 | $0.00 | $0.00 | $2,784.02 |
| | 4/19/2024 | | 4/1/2024 | $0.00 | $653,828.32 | $0.00 | $0.00 | $212.70 | $0.00 | $0.00 | $212.70 |
| | 9/5/2024 | ACH_9.5.24 | 7/1/2024 | $0.00 | $653,828.32 | $8,352.06 | $0.00 | $0.00 | $0.00 | $0.00 | $8,352.06 |
| | 9/10/2024 | Wire_9.10.24 | 10/1/2024 | $40,000.00 | $613,828.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,000.00 |
| | 9/25/2024 | ACH_9.24.24 | 10/1/2024 | $25,000.00 | $588,828.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25,000.00 |
| | 9/25/2024 | ACH_9.25.24 | 10/1/2024 | $25,000.00 | $563,828.32 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25,000.00 |
| | 11/7/2024 | 1058 | 10/1/2024 | $464,187.94 | $99,640.38 | $8,352.06 | $0.00 | $0.00 | $0.00 | $0.00 | $472,540.00 |
| NSF | 11/7/2024 | 1058 | 10/1/2024 | ($464,187.94) | $563,828.32 | ($8,352.06) | $0.00 | $0.00 | $0.00 | $0.00 | ($472,540.00) |
| | 12/30/2024 | Wire_12.30.24 | 10/1/2024 | $0.00 | $563,828.32 | $8,077.38 | $0.00 | $0.00 | $0.00 | $0.00 | $8,077.38 |
| | 3/29/2025 | 126 | 10/1/2024 | $0.00 | $563,828.32 | $274.68 | $0.00 | $0.00 | $0.00 | $0.00 | $274.68 |
| | 3/29/2025 | 126 | 1/1/2025 | $0.00 | $563,828.32 | $7,202.40 | $0.00 | $0.00 | $0.00 | $0.00 | $7,202.40 |
| | 3/29/2025 | 126 | 4/1/2025 | $874.98 | $562,953.34 | $7,202.40 | $0.00 | $0.00 | $0.00 | $0.00 | $8,077.38 |
| NSF | 3/29/2025 | 126 | 10/1/2024 | $0.00 | $562,953.34 | ($274.68) | $0.00 | $0.00 | $0.00 | $0.00 | ($274.68) |
| NSF | 3/29/2025 | 126 | 1/1/2025 | $0.00 | $562,953.34 | ($7,202.40) | $0.00 | $0.00 | $0.00 | $0.00 | ($7,202.40) |
| NSF | 3/29/2025 | 126 | 4/1/2025 | ($874.98) | $563,828.32 | ($7,202.40) | $0.00 | $0.00 | $0.00 | $0.00 | ($8,077.38) |
| | 4/28/2025 | Wire_4.28.25 | 10/1/2024 | $0.00 | $563,828.32 | $274.68 | $0.00 | $0.00 | $0.00 | $0.00 | $274.68 |
| | 4/28/2025 | Wire_4.28.25 | 1/1/2025 | $0.00 | $563,828.32 | $7,202.40 | $0.00 | $0.00 | $0.00 | $0.00 | $7,202.40 |
| | 4/28/2025 | Wire_4.28.25 | 4/1/2025 | $0.00 | $563,828.32 | $7,202.40 | $0.00 | $0.00 | $0.00 | $0.00 | $7,202.40 |
| | 4/28/2025 | Wire_4.28.25 | 5/15/2025 | $0.00 | $563,828.32 | $49.98 | $0.00 | $0.00 | $0.00 | $0.00 | $49.98 |
| | 7/2/2025 | Wire_7.2.25 | 5/15/2025 | $0.00 | $563,828.32 | $3,471.24 | $0.00 | $0.00 | $0.00 | $0.00 | $3,471.24 |
| | 7/2/2025 | Wire_7.2.25 | 6/1/2025 | $0.00 | $563,828.32 | $1,597.49 | $0.00 | $0.00 | $0.00 | $0.00 | $1,597.49 |
| ***Total Received*** *(Draws excluded)* | | | ***Cash:*** | $140,000.00 | | $90,794.97 | $0.00 | $0.00 | $0.00 | $0.00 | $230,794.97 |
| | | | ***Non-Cash:*** | $0.00 | | $0.00 | $0.00 | $915.84 | $0.00 | $0.00 | $915.84 |
| | | | ***Total:*** | $111,171.68 | | $90,794.97 | $0.00 | $915.84 | $0.00 | $0.00 | ($472,117.51) |

# Loan History - Drawdowns and Balances

**Sorted by Effective Date**

**109-01-08 North East Housing Initiative, Inc.**

## DISBURSEMENTS

| | Effective Date | Check # | Due Date | Principal | Interest | Escrow | Late Fee | Unapplied | Total |
|---|---|---|---|---|---|---|---|---|---|
| | 1/17/2023 | WIRE_1.17.23 | 7/1/2023 | $0.00 | $5,062.58 | $0.00 | $0.00 | $0.00 | $5,062.58 |
| | 6/27/2023 | WIRE_6.27.23 | 7/1/2023 | $0.00 | $7,593.91 | $0.00 | $0.00 | $0.00 | $7,593.91 |
| | 9/28/2023 | Wire_9.28.23 | 10/1/2023 | $0.00 | $4,162.99 | $0.00 | $0.00 | $0.00 | $4,162.99 |
| | 12/20/2023 | Wire_12.20.23 | 10/1/2023 | $26,023.98 | $0.00 | $0.00 | $0.00 | $0.00 | $26,023.98 |
| | 2/1/2024 | Wire_2.1.24 | 1/1/2024 | $0.00 | $3,828.42 | $0.00 | $0.00 | $0.00 | $3,828.42 |
| | 4/19/2024 | Wire_4.19.24 | 4/1/2024 | $0.00 | $3,828.42 | $0.00 | $0.00 | $0.00 | $3,828.42 |
| | 9/12/2024 | ACH_9.15.24 | 7/1/2024 | $0.00 | $3,828.42 | $0.00 | $0.00 | $0.00 | $3,828.42 |
| | 9/18/2024 | Wire_9.18.2024 | 10/1/2024 | $20,819.19 | $0.00 | $0.00 | $0.00 | $0.00 | $20,819.19 |
| | 10/22/2024 | ACH_10.22.24 | 10/1/2024 | $13,011.99 | $0.00 | $0.00 | $0.00 | $0.00 | $13,011.99 |
| | 10/22/2024 | ACH2_10.22.24 | 10/1/2024 | $13,011.99 | $0.00 | $0.00 | $0.00 | $0.00 | $13,011.99 |
| ***Total Disbursements*** | | | ***Cash:*** | $72,867.15 | $28,304.74 | $0.00 | $0.00 | $0.00 | $101,171.89 |
| | | | ***Non-Cash:*** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | ***Total:*** | $72,867.15 | $28,304.74 | $0.00 | $0.00 | $0.00 | $101,171.89 |

**End of Report Processing: Wednesday, November 19, 2025 10:14 AM**

# SUPPLEMENTAL DECLARATION EXHIBIT 2

National Housing Trust Community Development Fund

asevanto Page 1 of 2
Wed, Nov 19, 2025 10:12:02 AM v10.044 (00)

# Loan History - Drawdowns and Balances
**Sorted by Effective Date**

## 109-02-01 North East Housing Initiative, Inc.

**Board Date:** 5/5/2023 **Approved Loan Amount:** $60,000.00 **Corp:** #1 - NHTCDF
**Settled:** 5/11/2023 **Actual Loan Amount:** $60,000.00 **Lender:** #1 - NHT Community Dev Fund **Lender's Loan #:** L220
**Type:** Enterprise ***Balance at runtime:*** *$60,000.00* 1101 30th St NW Suite 400, Washington, dc 20007 USA

**Phases:**
1. Due 4/1/2023 through 5/6/2023, Pre-Funding Fees
2. Due 10/1/2023 for 4 Quarters, Interest Only (Traditional Mtg Quarterly) at 5.5%
3. Due 10/1/2024 for 4 Quarters, Interest Only (Traditional Mtg Quarterly) at 5.5%
4. Due 7/28/2025, Interest Only (Traditional Mtg Quarterly), balloon approx. $60,248 at 5.5%

**Loan Contact:** NEHI Invoicing
North East Housing Initiative, Inc.
P.O. Box 11762
P.O. Box 11762
Baltimore, MD 21206

Loan is Currently Open

## RECEIPTS AND DRAWDOWNS

| | Effective Date | Check # | Due Date | Principal | Resulting Loan Balance | Interest | Escrow | Fees | | Late Fee | Unapplied | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Draw | 5/12/2023 | WIRE_5.12.23 | | ($59,000.00) | $59,000.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 | ($59,000.00) |
| Non-Cash Draw | 5/12/2023 | | | ($600.00) | $59,600.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 | ($600.00) |
| Non-Cash Draw | 5/12/2023 | | | ($400.00) | $60,000.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 | ($400.00) |
| Non-Cash Adj. | 5/12/2023 | | 5/5/2023 | $0.00 | $60,000.00 | $0.00 | $0.00 | $600.00 | Orig | $0.00 | $0.00 | $600.00 |
| Non-Cash Adj. | 5/12/2023 | | 5/6/2023 | $0.00 | $60,000.00 | $0.00 | $0.00 | $400.00 | Lgl | $0.00 | $0.00 | $400.00 |
| | 10/12/2023 | ACH_10.12.23 | 10/1/2023 | $0.00 | $60,000.00 | $1,302.14 | $0.00 | $0.00 | | $0.00 | $0.00 | $1,302.14 |
| | 1/22/2024 | ACH_1.22.24 | 1/1/2024 | $0.00 | $60,000.00 | $825.00 | $0.00 | $0.00 | | $0.00 | $0.00 | $825.00 |
| | 4/17/2024 | ACH_4.17.24 | 4/1/2024 | $0.00 | $60,000.00 | $825.00 | $0.00 | $0.00 | | $0.00 | $0.00 | $825.00 |
| | 8/29/2024 | ACH_8.29.24 | 7/1/2024 | $0.00 | $60,000.00 | $825.00 | $0.00 | $0.00 | | $0.00 | $0.00 | $825.00 |
| | 12/4/2024 | Wire_12.4.24 | 10/1/2024 | $0.00 | $60,000.00 | $825.00 | $0.00 | $0.00 | | $0.00 | $0.00 | $825.00 |
| | 3/29/2025 | 126 | 1/1/2025 | $0.00 | $60,000.00 | $825.00 | $0.00 | $0.00 | | $0.00 | $0.00 | $825.00 |
| NSF | 3/29/2025 | 126 | 1/1/2025 | $0.00 | $60,000.00 | ($825.00) | $0.00 | $0.00 | | $0.00 | $0.00 | ($825.00) |
| | 4/28/2025 | Wire_4.28.25 | 1/1/2025 | $0.00 | $60,000.00 | $825.00 | $0.00 | $0.00 | | $0.00 | $0.00 | $825.00 |
| | 4/28/2025 | Wire_4.28.25 | 4/1/2025 | $0.00 | $60,000.00 | $825.00 | $0.00 | $0.00 | | $0.00 | $0.00 | $825.00 |

## Loan History - Drawdowns and Balances
**Sorted by Effective Date**

**109-02-01 North East Housing Initiative, Inc.**

### RECEIPTS AND DRAWDOWNS

| | Effective Date | Check # | Due Date | Principal | Resulting Loan Balance | Interest | Escrow | Fees | Late Fee | Unapplied | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ***Total Received*** | | | ***Cash:*** | $0.00 | | $6,252.14 | $0.00 | $0.00 | $0.00 | $0.00 | $6,252.14 |
| ***(Draws excluded)*** | | | ***Non-Cash:*** | $0.00 | | $0.00 | $0.00 | $1,000.00 | $0.00 | $0.00 | $1,000.00 |
| | | | ***Total:*** | ($1,000.00) | | $6,252.14 | $0.00 | $1,000.00 | $0.00 | $0.00 | ($52,747.86) |

**End of Report Processing: Wednesday, November 19, 2025 10:12 AM**